UNION GUARDIAN TRUST CO. v. STILLMAN.

1. BANKS AND BANKING—REORGANIZATION OF TRUST COMPANY—NOTICE TO BONDHOLDERS UNDER TRUST MORTGAGES.

   Notice of hearing on petition of attorney general and State banking commissioner for reorganization of trust company acting as trustee under a trust mortgage, running to "depositors, creditors, and stockholders, and/or all other persons in any manner interested in the foregoing reorganization," given by publication and posting pursuant to statute was sufficient notice of the reorganization proceedings to holders of bonds issued under trust indenture (Act No. 32, § 7, Pub. Acts 1933, as amended by Act No. 95, Pub. Acts 1933).

---

Trustee's duty of loyalty, see 1 Restatement, Trusts, § 206; to keep trust property separate, see 1 Restatement, Trusts, § 179.

Effect of breach of trust on trustee's compensation, see 1 Restatement, Trusts, § 243.

2. MORTGAGES—TRUST MORTGAGES—REORGANIZATION OF CORPORATE TRUSTEE—PARTIES—FORECLOSURE.

Holder of mortgagor's interest under trust mortgage who had no interest in premises either as a bondholder or otherwise at time corporate trustee underwent reorganization nor for a period of nearly four years thereafter is in no position to assert reorganized trustee may not maintain suit to foreclose trust mortgage where it appears to have managed the property to the satisfaction and with the acquiescence of predecessor holder of mortgagor's interest, and, under the statute controlling such proceedings as well as the antecedent conservator's proceedings, the continuance of a trust company's activities as a trustee was permitted without interruption or change (Act No. 32, §§ 5, 9, Pub. Acts 1933, as amended by Act No. 95, Pub. Acts 1933).

3. PRINCIPAL AND AGENT—LOYALTY OF AGENT REQUIRED.

Loyalty to his trust is the first duty which an agent owes to his principal, and without it the perfect relation cannot exist.

4. MORTGAGES—TRUST MORTGAGES—TRUSTEE AS PROPERTY MANAGER —FORECLOSURE.

In suit to foreclose trust mortgage wherein holder of mortgagor's interest by quitclaim deed from grantee of original mortgagor claimed trustee had incapacitated itself to prosecute foreclosure suit by reason of the fact that it had acted as agent of mortgagor's assignee in the management of the property for a percentage of the income before and after mortgage was in default, course of conduct of the trustee in managing property while also occupying position of trustee *held*, not to have incapacitated it from prosecuting foreclosure suit nor to have forfeited its right to reasonable compensation for such managerial service, whether such service was rendered pursuant to contract with holder of mortgagor's interest or pursuant to provision of trust instrument authorizing it to do so when mortgage was in default.

5. SAME—DELAY IN FORECLOSING TRUST MORTGAGE—FEE HOLDERS— BONDS.

Holder of fee title of premises subject to trust mortgage, who also held some of the bonds issued under such mortgage, as holder of the fee, had no ground for complaint as to failure of trustee to foreclose mortgage until more than six years after default first occurred, and, as bondholder, had no basis for complaint where it is not shown bondholders had sustained any loss as a result of the delay and trust instrument did not require trustee to institute foreclosure proceedings.

6. APPEAL AND ERROR—DELAY IN FORECLOSURE OF TRUST MORTGAGE
—DISCRETION OF TRUSTEE.

Under record presented on appeal in suit to foreclose trust
mortgage Supreme Court is unable to say trustee did not ex-
ercise good judgment to the profit of the bondholders by
continuing its management of the mortgaged property and
deferring foreclosure several years until financial conditions
were more favorable.

7. TRUSTS—COMPENSATION OF TRUSTEE UNDER TRUST MORTGAGE—
REPORTS.

Corporate trustee under trust mortgage, given to secure bond
issue of $50,000, which paid taxes and insurance and made
repairs in managing the property *held,* not barred from con-
tinuing to manage the property nor from just compensation
for services rendered by reason of the retention of $1,862.81
by liquidating trustees of trustee which had undergone re-
organization during period of its trusteeship, where retention
and accumulation of funds were authorized by the trust in-
strument and reported in regular periodical reports to bond-
holders.

8. SAME—NEGLIGENCE—VIOLATION OF TRUST.

Circumstances of particular case govern determination as to
whether trustee is guilty of negligence or violates its trust
duty, and if there is no *mala fides* or anything wilful in the
conduct of the trustee, the court will always favor him.

9. SAME—TRUST MORTGAGES—ADDITIONAL SECURITY—DEMAND BY
FEE OWNER.

Trustee under trust mortgage which had acquired, as additional
security for bonds issued thereunder, policies of insurance on
the life of mortgagor's grantee and had paid some of the
premiums thereon was not required to obtain and turn over
to such grantee's grantee the cash surrender value of such
policies upon latter's demand made after he became fee owner
under quitclaim deed.

10. APPEAL AND ERROR—TRUSTEES—ACCOUNTING—COMPENSATION—
ATTORNEY FEES—EVIDENCE.

On appeal in suit to foreclose trust mortgage testimony as to
accounting and proper allowance as compensation for trustee
services and attorney fees, which was somewhat summary in
character *held,* sufficient where not challenged by competent
testimony, especially where case was submitted for decision
solely on testimony for plaintiff.

11. MORTGAGES—TRUST MORTGAGES—POSSESSION—DAMAGES.
    Fee holder under trust mortgage was not entitled to damages
    for forcible entry and continued trespass on cross bill in
    suit for foreclosure of the mortgage where cross plaintiff's
    demand for possession from trustee who was then managing
    the property under agreement with cross plaintiff's predeces-
    sor in title was followed on next day by notice of default and
    taking over rents and income of the mortgaged property
    under the trust instrument, and bill to foreclose on next day
    thereafter.

Appeal from Wayne; Keidan (Harry B.), J. Sub-
mitted October 23, 1941. (Docket No. 15, Calendar
No. 41,607.) Decided January 5, 1942.

Bill by Union Guardian Trust Company, trustee,
against Edwin H. Stillman and others to foreclose a
trust mortgage and for incidental relief. Cross bill
by defendant Eugene J. Stephenson for an account-
ing, damages and possession of the property. De-
cree for plaintiff and dismissing cross bill. Defend-
ant Stephenson appeals. Affirmed and remanded
for further proceedings.

*John R. Rood* (*Joseph B. Beckenstein*, of coun-
sel), for appellant.

*Levin, Levin, Garvett & Dill* (*Bayre Levin* and
*Earlmont H. Dill*, of counsel) for plaintiff.

NORTH, J. The bill of complaint herein was filed
for the primary purpose of foreclosing a trust mort-
gage covering apartment property located in the city
of Detroit. Plaintiff is the trustee under the mort-
gage and incident to the foreclosure asked for the
appointment of a receiver, injunctive relief and de-
termination of the amount of fees to be paid to the
trustee for its services. The trust mortgage, given
to secure payment of a $50,000 bond issue, was exe-

cuted on November 1, 1926, by Edwin H. Stillman and wife, who then held fee title to the property. By warranty deed dated January 17, 1928, the Stillmans conveyed the property to defendant William Prost, subject to the trust mortgage which the grantee assumed and agreed to pay. Prost continued to hold title to the property until March 19, 1938, at which time he conveyed title by quitclaim deed to defendant and appellant, Eugene J. Stephenson; and at the same time Stephenson became the holder of $4,100 of these bonds. Substituted service was obtained on defendants Stillman, but they were defaulted for nonappearance. Prost appeared and answered; and defendant and appellant Stephenson appeared, answered and filed a cross bill to which plaintiff made answer. After a full hearing in the circuit court a decree was entered granting the relief sought by plaintiff and dismissing Stephenson's cross bill. He alone has appealed.

The record establishes the execution of the trust mortgage, the issuance of bonds and default in payments due thereunder at the time the bill of complaint was filed. There was due under the terms of the mortgage on October 1, 1940, $56,631.32. Notwithstanding the default, one of appellant's contentions is that at the time the suit was started the Union Guardian Trust Company, plaintiff herein, was not in fact and in law the trustee and had no right to institute the foreclosure proceedings. The facts and circumstances which give rise to this contention on the part of appellant may be stated in substance as follows. The Union Trust Company, designated as trustee in the trust instrument, later changed its corporate name to Union Guardian Trust Company. On March 23, 1933, the Michigan State banking commissioner appointed George H. Kirchner conservator of the trust company with

power "to continue to exercise any and all fiduciary functions of said Union Guardian Trust Company." In February, 1934, the attorney general and State banking commissioner, acting in behalf of depositors holding more than 75 per cent. of the deposits in the trust company, filed a petition in the circuit court of Wayne county for the reorganization and reopening of the trust company. This proceeding was under Act No. 32, Pub. Acts 1933, as amended by Act No. 95, Pub. Acts 1933 (Comp. Laws Supp. 1940, § 12077-1 et seq., Stat. Ann. § 23.91 et seq.). Notice of hearing was by publication and posting only, as ordered by the court. Upon hearing, reorganization was decreed and it was also adjudged that:

"The fiduciary business of the company shall be continued by the reorganized company, carrying with it any and all fees and/or compensation in the process of collection or to be collected. Funds in the hands of the conservator and known as 'conservator's trust funds' shall follow the respective trusts and be administered by the reorganized company accordingly."

On May 26, 1934, the Union Guardian Trust Company was authorized to reopen. It did so and continued to act as trustee under the trust instrument involved in this suit. Except as above noted, neither substituted nor personal service was obtained on the holders of bonds issued incident to the trust here involved either in the conservator's proceedings or in the reorganization proceedings. But the statutory notice published and posted was sufficient. The holders of these bonds were not directly interested in the reorganization of the trust company. Their property rights were not thereby adjudicated. In any event the notice ran to the "depositors, creditors, and stockholders, *and/or all other persons in any manner interested in the foregoing reorganiza-*

*tion.''*  The notice given complied with the provisions of the act under which the trust company was reorganized.  Act No. 32, § 7, Pub. Acts 1933, as amended by Act No. 95, Pub. Acts 1933 (Comp. Laws Supp. 1940, § 12077-7, Stat. Ann. § 23.97).  The bondholders have no cause to complain that there was lack of proper service.

Appellant contends that the proceedings above noted terminated the trustee's right longer to administer this trust, and therefore it could not institute this foreclosure suit.  In this connection Stephenson alleged in his answer the following: ''That since March 23, 1933, said Union Guardian Trust Company has never engaged in business, nor had any capacity to act as a corporation and has gone into liquidation.  By reason of the premises, said original trustee-mortgagee  *  *  *  has ceased and was disabled to act as mortgagee-trustee under the mortgage which plaintiff seeks to foreclose herein.''  We think there is no merit to this contention; and in any event it cannot be successfully asserted by appellant.  He had no interest whatever as an owner of the mortgaged property nor as a bondholder until nearly four years after the Union Guardian Trust Company resumed business as reorganized.  During that period defendant Prost owned the mortgaged premises; and it appears from the record that Prost acquiesced in the management of the trust by the trustee up to the time he disposed of the property in 1938; and as a witness in the trial of the case Prost expressed himself as entirely satisfied with the conduct of the business by the Union Guardian Trust Company.  Appellant as Prost's grantee in the quitclaim deed or as the purchaser of bonds in 1938 with full knowledge of all the pertinent facts stands in the same position as Prost and is estopped from successfully maintaining the claim

hereinbefore considered. Nor is appellant right in his contention that by reason of its reorganization the trustee ceased to function in the execution of this trust. Both in the conservator proceedings and in the reorganization proceedings continuance of the company's trust activities was ordered. Further, the statute which controls the conservator proceedings and the reorganization provides:

"SEC. 5. * * * The commissioner of the banking department is empowered and shall have authority to permit said bank or trust company under his direction to continue to exercise the fiduciary functions, if any, of such bank or trust company until such time as a successor fiduciary shall have been regularly appointed and qualified. * * * If such trust is retained the commissioner may hold, exercise and perform all of the rights, powers, privileges, duties and obligations of said trustee and/or fiduciary.

"SEC. 9. Nothing in this act shall be construed to prevent any bank or trust company or the commissioner of the State banking department conducting the affairs of any such bank or trust company from conducting its business as agent or trustee in due course and receive and disburse funds in relation thereto when acting in that capacity." Act No. 32, Pub. Acts 1933.

Reorganization did not interrupt or change the corporate entity of the trustee. *Westveer* v. *Ter Keurst,* 276 Mich. 277; *In re Burger's Estate,* 276 Mich. 485.

Another ground or reason in consequence of which appellant asserts the trust company was not the trustee at the time this suit was started and was therefore without authority to institute this foreclosure proceeding necessitates a recital of the facts and circumstances about to be stated. This phase of the record also bears upon appellant's con-

tention that since the trustee has acted in violation of its trust, it should be denied compensation for its services and held to indemnify the bondholders against loss.

On February 13, 1930, Mr. Prost, then the owner of the mortgaged property, executed and delivered to the Union Trust Company an agreement and power of attorney by which he authorized the trust company to manage and operate the apartment building and to make payments out of the net proceeds received into the sinking fund established under the terms of the trust mortgage. For such managerial services the trust company charged and received 5 per cent. commission upon the income from the mortgaged property. The Union Guardian Trust Company continued its management of the mortgaged apartment property from February, 1930, until the bill of complaint herein was filed on March 24, 1938; and thereafter it continued in the possession and management of the property under orders of the trial court. The position taken by appellant is that the trust company, which in the first instance undertook to serve as a trustee primarily representing the interest of bondholders, by entering into the management contract with the owner of the property who stood in the position of the mortgagor, attempted to represent and serve antagonistic interests simultaneously, and thereby "disqualified, prohibited and estopped" itself from continuing to act as trustee. But in this connection it appears from an affidavit made by Stephenson in support of a motion to dismiss the bill of complaint "that before making such purchase [of the mortgaged property] he inquired of the plaintiff Union Guardian Trust Company whether it was operating the property described in the bill of complaint as agent for said William Prost * * * and was informed by the

plaintiff that it was acting as such agent and in further confirmation of said representation the said plaintiff exhibited to this deponent accounts of its operations on said property and the rents it had collected; * * * and * * * when this deponent informed said plaintiff that deponent preferred to operate said premises himself, * * * said plaintiff sent one Walter Dillingham to interfere with the management of the said property by this deponent; and on March 23, 1938, after purchase of the said premises by this deponent, * * * said Walter Dillingham * * * excluded the deponent * .* * from the said building, and informed deponent that he was there armed and directed by the plaintiff to retain the said building by force.'' The bill of complaint was filed the next day (March 24, 1938) and, as noted above, plaintiff's possession and management thereafter was under the authority and protection of court orders.

In considering appellant's complaint that the trustee by undertaking in February, 1930, to manage the mortgaged property and in thereafter doing so the trustee was guilty of a breach of its trust, it should be noted that this trust mortgage obligation had been in default since November 1, 1931, and further that article 4, § 1, of the trust instrument provides:

''In addition to the other rights granted trustee upon any event of default occurring, it is specifically agreed that should default be made upon the part of said mortgagor in the making of the payments provided for in this indenture into the sinking fund at the time and in the manner prescribed herein, then the trustee shall immediately have the right to enter said premises and take immediate possession of the same, together with all the rents and income of every name and nature, and apply such income

to the sinking fund provided for herein.  *  *  *  It is further specifically agreed on the part of said mortgagor that the trustee shall retain possession of the premises hereby demised, together with the rents and incomes thereof, when so taken as aforesaid, until the requirements of this indenture relative to sinking fund shall be fully complied with.''

Thus it appears that in continuing in possession and management of the property from November, 1931, to the date of starting this suit (March 24, 1938) the trustee was acting in accord with its right under the terms of the trust instrument, and it is a fair inference that if the trustee had not taken the course of action that it did the bondholders would have had just cause to complain.  Appellant's counsel stated to the trial court at the close of the proofs:

''I am not making a charge at this time of any fraud or mismanagement against the Union Guardian Trust Company because I have no facts upon which I can make such claim.  However, I do say this on the record, that the record in this case now shows beyond any question that they have violated their fiduciary duty in not proceeding with the foreclosure of the mortgage when it became in default; and that they have violated their duty because of the fact that their position was inconsistent because they were at the time acting as agent for the mortgagor.''

There should be no departure from the salutary holding of this Court that: ''Loyalty to his trust is the first duty which the agent owes his principal. Without it, the perfect relation cannot exist.'' *McLennan* v. *Cole*, 224 Mich. 225, 234.  But there is nothing in the record in the instant case which would justify holding that by its noted course of conduct the trustee incapacitated itself to prosecute this foreclosure suit; nor did it thereby forfeit its right to reasonable compensation.

It is true that under its contract with the owner for management of the property plaintiff was paid 5 per cent. on the income, but the undisputed testimony is that this was the fair and usual charge for such service, and whether the trustee acted under the management contract with the owner or under the power conferred by the trust instrument, it would have been entitled to just compensation for its services as rendered.

Appellant urges that the trustee, in prolonging its management of the mortgaged property and in not starting foreclosure until more than six years after default first occurred, has been derelict in the discharge of its duties. As holder of the fee to the mortgaged premises surely appellant has no ground for complaining in this particular. Nor has appellant established that either he or other bondholders, none of whom demanded foreclosure, have sustained any loss as a result of such delay. These bonds were not considered desirable under the conditions which prevailed in 1931 or 1932, when default first occurred. At that time they were sold at 15 cents on the dollar. The trust instrument contains no provision which requires the trustee to institute foreclosure proceedings in the event of default. Instead, the trust instrument provides:

"The trustee shall not be liable for the exercise of any discretion or power hereunder or mistakes or errors of judgment or otherwise in connection with this trust, except for its own wilful misconduct or gross negligence. * * *

"The trustee shall be under no obligation or duty to perform any act hereunder, or to institute or defend any suit in respect thereof, unless properly indemnified to its satisfaction."

We cannot say from the record that by continuing its management of the mortgaged property and de-

ferring foreclosure until financial conditions were more favorable, the trustee has not exercised good judgment to the profit of the holders of these bonds.

Appellant further charges as conduct by the trustee in breach of its trust that the moneys collected by the trustee as income from the mortgaged property were commingled with the trustee's own funds and used by the trustee. The only evidence of loss or damage resulting to bondholders therefrom is that funds from this trust to the extent of $1,862.81 were, at the time this case was heard in the circuit court, impounded with liquidating trustees of the Union Guardian Trust Company. We do not think it can be said that the trustee, incident to paying taxes, insurance, and making repairs in managing the mortgaged property, might not be justified in retaining in its hands funds in that amount. Under given conditions bondholders may have just cause to complain if a trustee mingles with its own funds moneys belonging to the trust. But in the instant case the trustee made regular periodical reports to bondholders. From such reports it appears the trustee was managing the mortgaged property under an agreement with the owner, that part of the funds were carried in a "property management account," and that the trustee was accumulating and retaining funds as the result of its management of the property. Under its management contract with Mr. Prost the trust company was authorized to use funds thus obtained "to make payments in sinking fund as required by trust mortgage." As to moneys in the sinking fund the trust instrument provided: "Said funds while so held by the trustee may be used by it for its own purposes in the same manner as a banker may use the moneys deposited by his customers." There is no testimony that any bondholder demanded distribution by the trustee of ac-

cumulated funds prior to appellant's demand that all of such funds be paid to him as the owner of the fee to the mortgaged property in 1938. The trustee properly refused appellant's demand because the funds were then held by the trustee as part of the sinking fund for the benefit of bondholders. The trustee's conduct in the particular under consideration does not, under the circumstances of this case, furnish grounds for holding the trustee barred from continuing to act or for depriving it of just compensation for services rendered.

"In determining whether the trustee was guilty of negligence or violation of its trust duty, we must be governed by the circumstances of the particular case." *Lawrence v. First National Bank & Trust Co. of Kalamazoo,* 266 Mich. 199, 205.

"If there is no *mala fides,* nothing wilful in the conduct of the trustee, the court will always favor him." *In re Grammel's Estate,* 120 Mich. 487.

Early in its trusteeship plaintiff, as further security for the bondholders, obtained from Mr. Prost policies of insurance on his life aggregating $12,000. Some premiums on these policies were paid by Mr. Prost, but others were paid by the trustee under orders of the court. At the same time appellant demanded that the trustee turn over to him the accumulated funds in its hands (March 22, 1938), he also demanded that the trustee obtain and turn over to him the cash surrender value of these policies. Clearly the trustee was justified in refusing this demand and in retaining in its trust capacity for the bondholders the additional security it had thus acquired.

We are not in accord with appellant's contention that the testimony in this case is not sufficiently full and detailed to sustain the decree of the trial court in approving the trustee's account as tendered

or in fixing the compensation to which plaintiff trustee is entitled. The case was submitted to the court solely on the testimony offered in behalf of plaintiff. Defendants produced no witnesses nor did they offer any testimony in their behalf except such as was developed on cross-examination. This condition of the record was called to the attention of appellant's counsel at the close of the proofs in the trial court. The trial judge stated: "As the record now stands I have to approve everything they have submitted, if I hold they are proper party plaintiff;" and the court thereupon inquired: "You desire to produce no further proofs?" to which counsel for appellant responded "No further testimony, your Honor." It is true that the testimony as to the accounting was somewhat summary in its character; but since it was not challenged by competent testimony it was sufficient. Nor was there any testimony offered as against that in behalf of plaintiff bearing upon the proper allowance as compensation for trustee services rendered and attorney's fees. The determination of the trial judge is sustained by the record and cannot be disturbed on this appeal.

The foregoing sufficiently covers the various contentions made in behalf of appellant with the exception of the claim made in his cross bill that he should be decreed damages for "forcible entry and continued trespasses." We quote the charging part of the cross bill in full:

"This defendant charges that by force and arms the plaintiff took and excluded this defendant from possession of the premises described in the bill of complaint on or about March 23, 1938, of which this defendant is owner in fee simple and entitled to exclusive possession, and has ever since wholly excluded this defendant and cross plaintiff therefrom, by malicious abuse of the process of this court, and

in defiance of its duty to account to this defendant and cross plaintiff as his agent, and thereby has obtained and appropriated to itself all the rents and profits of said premises, to the great damage of this defendant and cross plaintiff.''

From the facts hereinbefore stated it is apparent that this record does not sustain the charge that the plaintiff herein unlawfully withheld possession of the mortgaged premises from appellant for any appreciable time, if at all. There can be no question but that prior to March 22, 1938, when appellant first informed plaintiff of his alleged rights and demanded possession, that plaintiff was entitled to possession under its management contract with Mr. Prost. On the following day the trustee exercised its right under the trust instrument by giving and recording notice of default and taking over the rents and income of the mortgaged property. Appellant alleges in his cross bill it was on this same day that plaintiff forcibly ''took and excluded this defendant from possession of the premises.'' The next day, March 24, 1938, plaintiff filed the bill of complaint herein. Thereafter it continued in possession of the mortgaged premises by authority of and under the orders of the court. Appellant has not established the right to any relief under his cross bill.

The decree entered in the circuit court is affirmed with costs to appellee; and the case is remanded to the circuit court for further proceedings therein looking to the consummation of foreclosure.

CHANDLER, C. J., and BOYLES, STARR, WIEST, BUTZEL, and SHARPE, JJ., concurred. BUSHNELL, J., did not sit.