Helen Webster Hatfield et al., Appellants, v. First National Bank of Danville, Illinois, et al., Appellees.

Gen. No. 9,354.

Opinion filed November 4, 1942.   Opinion modified and rehearing denied February 2, 1943.

JOHN T. ALLEN and ALLEN, DALBEY & FOREMAN, all of Danville, for appellants.

BOOKWALTER, CARTER & GUNN, MEEKS & LOWENSTEIN and REARICK & REARICK, all of Danville, for appellees.

MR. PRESIDING JUSTICE RIESS delivered the opinion of the court.

Plaintiffs, Helen Webster Hatfield, daughter, as beneficiary of a life interest in the trust estate created by certain provisions of the last will and testament of Augustus L. Webster, deceased, and Helen Hatfield Purcell, Catherine Hatfield Olmsted and Rose Hatfield Allen, grandchildren of said testator in whom the assets of said trust estate will vest in remainder upon the termination of the above mentioned life estate, have appealed from certain adverse provisions of a final decree rendered against them and in favor of the defendant appellee, First National Bank of Danville, Illinois, individually, and as successor trustee of said estate under the terms of said will. The decree was rendered by the circuit court of Vermilion county on December 5, 1941, in a suit in equity wherein plaintiffs sought an accounting and recovery of the alleged previous market value of 308 shares of capital stock of the Palmer National Bank of Danville, Illinois, which had been purchased and held by the above named testator during his lifetime, and which said successor trustee was alleged to have negligently retained and failed to sell in default of its duties and obligations as such successor trustee under the terms of said will.

The will of Augustus L. Webster, who died in 1922, was dated February 10, 1915, and with subsequent codicils thereto was duly admitted to probate in the county court of Vermilion county on the 27th day of February, 1922. In addition to making a number of specific bequests and provisions, the will created a trust estate consisting of certain listed assets and the subsequent income and dividends accruing therefrom, for the benefit of his wife Eliza, E. Webster, since deceased, and of certain children and grandchildren of the testator, on terms set forth in the will. The inventoried value of the estate of Augustus L. Webster,

deceased, consisting of certain real estate and personal property was considerably in excess of $100,000. The provisions of said will and codicils, in so far as the same relate to the trust estate and bank stock in question read as follows:

"9th. I, Augustus L. Webster, give and bequeath to my wife, Eliza E. Webster, should she survive me, . . . Lots Seven (7) Ten (10) and Eleven (11) in Block Two (2) in James Spear's Addition to Danville, Vermilion County, Illinois, with their appurtenances, and also all stock owned by me at the time of my death in the Webster Grocery Company of Danville, Illinois, . . . and also all stock owned by me, at the time of my death, in the Palmer National Bank of Danville, Illinois, to be transferred to her, or him, by my executrix, hereinafter named, or such person as shall settle my estate as of the date of the probate of this will, in trust for the uses and purposes following:

"(a)  To take and hold the legal title to said real estate and stocks in said Webster Grocery Company and the Palmer National Bank of Danville, Illinois, rent said real estate for periods not exceeding Ten (10) years, and collect the rents of said real estate, pay taxes, for insurance and all necessary and proper repairs to preserve the same and keep it productive.

"To take and hold the legal title to said stocks, vote the same as any other stockholder, collect and receipt for the dividends paid by the said Company in bank thereon until the final termination of the trust hereby created.

"From the death of my said wife, Eliza E. Webster, the entire net income of said trust property to be divided equally between my two daughters, Clara Webster Short and Helen Webster Hatfield, so long as they both may live; should either of my daughters, Clara Webster Short or Helen Webster Hatfield die before the termination of the trust hereby created, leaving a child or children, her income from the trust

estate shall be paid to her surviving child or children by representation until the termination of this trust; should either of my two daughters, Clara Webster Short or Helen Webster Hatfield die leaving no child or descendant of child surviving them, from her death to the termination of this trust her share of the income of said trust shall be paid to my surviving daughter, so long as she may live.''

A duly probated codicil to the will of Augustus L. Webster, executed on October 6, 1915, provides in part as follows:

''First: That instead of my wife and instead of Owen A. McFarland, I hereby name, constitute and appoint the Commercial Trust & Savings Bank of Danville, Illinois, Incorporated, as the executor and trustee, to carry out the provisions of said will, and to that extent my will is hereby modified, but in all other respects the same is fully ratified and confirmed, it being my intention that the executor and trustee herein named shall possess all the powers, and perform all the duties in said will mentioned, and by law implied in the premises.''

At the time of testator's death in 1922 he left surviving him, his widow, Eliza E. Webster, who died testate in 1926, and two daughters, Helen Webster Hatfield and Clara Webster Short, the latter also having since departed this life leaving her surviving no children nor lineal descendants. The three coplaintiffs of Helen Webster Hatfield are her only children and are the only grandchildren of the testator Augustus L. Webster. Following the death of said testator, the Commercial Trust & Savings Bank qualified as executor of the will and completed the administration of his estate. It then assumed the performance of its duties as trustee of the trust estate provided for in the will, which included the bank stock in question, and in pursuance of an order of the circuit court of said county which directed such trustee ''to

take and hold the legal title to said stock, vote the same as any other stockholder, collect and receipt for the dividends paid by said corporations thereon until the final termination of the trusts by said codicil created.'' Such decree further provided that ''said trusts shall terminate upon the death of the last one of the three persons above named, viz: Eliza E. Webster, Clara Webster Short and Helen Webster Hatfield, and thereupon said trustee shall distribute the balance of the trust funds and the body of said trust property to the grandchild or grandchildren of said Augustus L. Webster then surviving.''

As such testamentary trustee, it thereafter filed *ex parte* annual reports which were approved by the court, from the year of its appointment until September 5, 1931, when said trustee bank by virtue of an arrangement with the defendant First National Bank of Danville, Illinois, and the approval of such transfer by the proper State and Federal Officials and by due order of said circuit court, assigned and turned over its trust business and assets to said defendant First National Bank of Danville, and said bank was by an order of the circuit court duly appointed as successor trustee and so duly qualified and still continues to act.

The trust estate herein included among other assets the certain 308 shares of capital stock of the Palmer National Bank of Danville, and dividends of 6 per cent were declared and paid on said shares of stock of par value of $100 each in 1922 and of 12 per cent during the respective years of 1923 to 1926 inclusive; no dividends were paid in 1927 or 1928; a 5 per cent dividend was paid in 1929, no dividends in 1930, 3 per cent in 1931 and no cash dividends appear to have been paid thereafter. The stock was not listed on any stock exchange and the highest market value thereof contended for by the plaintiffs was $200 to $250 per share during the years subsequent to the testator's decease, on the basis of which market value they seek recovery

from the defendant, with 5 per cent interest thereon from such date as the court may find that the same should have been sold by the trustee.

In the latter part of the year of 1930, an assessment of $50 per share was made upon the capital stock of the Palmer National Bank, to meet the payment of which, the then trustee, upon petition therefor and leave of said court duly had and procured with the written consent of all of the beneficiaries who are now the plaintiffs herein, of date December 26, 1930, surrendered to the bank as purchaser, 76 shares of the bank stock of said trust estate at an agreed valuation fixed in the order at $200 per share in discharge and satisfaction of the above stock assessment. Such beneficiaries were all of full age at the time, and expressly stated in such consent that they "represent to the court that we are acquainted with the matters above set forth; that it would be to our best interests that the court enter an order as above prayed and we hereby enter our appearance, and request the court to grant said petition."

The foregoing proceedings were all had prior to the appointment of defendant on September 5, 1931. Shortly thereafter, upon consent of proper officials and order of court, a merger or consolidation occurred between the Palmer National Bank and American Bank & Trust Company; the Palmer National Bank stock having been changed from $100 to $20 par value (abst. 132, rec. 191) each shareholder receiving pro rata new shares in exchange for each old share (abst. 130, rec. 186, 187) and by such merger, the combined capital of $450,000 was reduced to $300,000 and stock allotted to the Palmer Bank stockholders on the basis of 3⅓ new shares for each share held by them and to the American Bank stockholders at 1⅔ new for each old share, so issued pro rata on the basis of required appraisements. From the record, we deem the validity of above transaction not to be in question and to have

been valid. A later 50 per cent stock dividend was issued and subsequently, upon demand of Federal Bank authorities requiring that 200,000 shares of preferred stock be issued in exchange for $200,000 in money, compulsory reduction of par value of stock resulted, from $20 to $6⅔ per share, which, however, was not shown to have affected the actual value of all bank assets; the slow assets being then charged off for collection from time to time thereafter. On June 30, 1941, the preferred stock issue had been reduced to $136,000 securing which there was held a certain reserve account and other items as undivided profits.

The court below, as prayed and recited in the complaint and by agreement of all parties to the suit, construed the provisions of the will of Augustus L. Webster creating the trust estate and the provisions of the will of Eliza E. Webster in relation thereto, as having vested title to the personal property so held in trust in the trustee for the use and benefit of plaintiff Helen Webster Hatfield for the term of her natural life with vested remainder to plaintiffs Helen Hatfield Purcell, Catherine Hatfield Olmsted and Rose Hatfield Allen, upon the termination of the said life estate and ordered distribution accordingly. Concerning such construction, no error is assigned on appeal and it is binding upon the parties hereto. *McDonald v. Shimeall*, 282 Ill. 42, 118 N. E. 399.

It does not appear that any request or demand was made by any of the beneficiaries to dispose of such stock at any time prior to, during or subsequent to the ''depression'' which occurred in 1929. Evidence was offered tending to show that certain purchases of stock in the Palmer National Bank were made between 1923 and 1928 at prices ranging from $200 to $250 per share. It did not appear that there was any market value or sales of any such stock between 1931 and 1939 except two small sales for $5 to $6.50 per share. The evidence tended to show that the stock in question

was not salable while held by the defendant trustee and that no criterion existed for fixing a value at pre-depression prices. *Kubin v. Chicago Title & Trust Co.*, 307 Ill. App. 12, 29 N. E. (2d) 859.

The final report of the predecessor trustee covering the period prior to December 1931, which included the principal depression years wherein the stock, together with all other stocks, whether bank or otherwise, made disastrous trends downward in their book, market and salable value, which fact not only appears from the evidence concerning the stock herein but was a generally prevailing condition of which the courts of review of this State and other States have taken judicial notice. In passing upon the question of whether or not a surcharge should be made against the trustee, one of the factors in the light of which alleged negligence may be considered is the existence and effect of the "depression" upon stock or property values in general of which the court will take judicial notice. *In re Estate of Busby*, 288 Ill. App. 500, 6 N. E. (2d) 451. Also see *Pank v. Chicago Title & Trust Co.*, 314 Ill. App. 53, 40 N. E. (2d) 787. However, current economic depression does not render the trustee immune from liability in the event of negligence resulting in loss to the beneficiary, since the existence of depressions, which tend to create stagnant or subnormal market conditions, do not result in the creation of legal moratoriums in so far as the due performance of affirmative duties by persons acting in a fiduciary capacity are concerned. The special and distinctive facts of each case must determine the liability or exoneration of the particular fiduciary whose conduct is in question. *In re Estate of Busby, supra.*

Trustees must employ such diligence and prudence as men of discretion and intelligence in such matters employ in their own like affairs. In determining whether a trustee has acted prudently, courts must look at the facts as they existed unaided by subsequent

events. The court, in determining liability of trustees, must distinguish between trustee's investment of trust funds and making or failing to make prompt disposition of securities received from creator of trust. Ordinarily, trustees who act honestly and with ordinary prudence are not liable for mere errors of judgment. (*Pank v. Chicago Title & Trust Co., supra.*) The court is not required to hold honest trustees liable for loss sustained by retaining an unauthorized security if the trustee acted honestly and prudently. A trustee receiving stock in testator's estate under direction to continue the investment, will not, in the absence of negligence, fraud or other improper conduct, become liable for losses resulting from an honest mistake in judgment in the retention of stock in a declining market, before making sale thereof. A wisdom developed after an event and having it and its consequences as its direct source, is a standard no man should be judged by. (*In re Estate of Busby, supra.*) *In re Clark's Will,* 257 N. Y. 132, 177 N. E. 397; *In re Shipley's Estate,* 337 Pa. 571, 12 A. (2d) 343.

In an action in equity by beneficiaries against trustees seeking recovery of damages and further relief arising out of alleged negligent failure to sell stock before it has declined in value, the question of whether or not the defendant who is charged therewith is guilty of negligence by such failure becomes one of fact, to be determined by the chancellor who hears such cause from consideration of the whole of the evidence, and if a reviewing court cannot say that the finding of the chancellor upon such issues is against the manifest weight of the evidence, the decree of the trial court should be affirmed. (*Kubin v. Chicago Title & Trust Co., supra.*) While trustees under a will, whatever the extent of their power and authority may be, must always act in good faith and with sound judgment and prudence (*Merchants' Loan & Trust Co. v. Northern Trust Co.,* 250 Ill. 86, 95 N. E. 59); the creator of a

trust may nevertheless designate how the investment may or shall be made and what security may be taken or that the security may be dispensed with, and the trustee will be bound by such directions.

The statute of Illinois enacted in 1905, Ill. Rev. Stat. 1941, ch. 148, sec. 32; Jones Ill. Stats. Ann. 135.05, concerning the investment of trust funds when not otherwise provided for by will or other instrument creating such trust, is intended to be permissive and not mandatory where the instrument constituting or creating the trust provides for other investments than those named in the statute. Concerning the plaintiffs' contention that the bank stock was not a proper investment under the above statute, it may be noted that in the instant case the bank stock in question was purchased and held by the testator over a period of many years prior to the time of his death, and was considered by him to be sound, and the dividends arising therefrom were made payable, together with certain dividends from the stock of his grocery company and net income of his real estate over the period of a life estate and was to vest in remainder under a certain clause so provided in his will and so properly construed by the chancellor below.

The facts in the case of *People v. Canton Nat. Bank*, 288 Ill. App. 418, are illustrative of a case wherein we held that the negligence of the testamentary trustee was such as to create a liability for subsequent loss in the value of the corpus of the trust estate. In that case, however, it was expressly shown that on repeated occasions the beneficiary had demanded that the trustee sell the stock, which he refused to do and the beneficiaries brought a purchaser to him who was ready, willing and able to pay $275 per share, which offer the trustee refused to accept. There was no acquiescence, either express or implied, on the part of the beneficiary therein to hold the bank stock as part of the assets of said trust estate. On the contrary, the

trustee bank permitted its conflicting interests to adversely prejudice the rights of the beneficiary by refusing to sell said stock upon demand of the beneficiary, and we held under the evidence therein that the trustee became liable in a suit in equity to a surcharge for losses incurred thereby.

Under the facts and circumstances in evidence herein we see no force in the plaintiffs' contention that the trustee became liable to the beneficiaries for breach of trust in neglecting to file suit against the predecessor trustee upon assuming its duties as successor trustee. At the time of the final report and discharge of the previous trustee in 1931, all the plaintiffs, then adults, entered their respective appearance in writing and expressly consented to the discharge of the former trustee and the appointment of the defendant trustee. They filed no suit at that time when they might have sued, filed no objection to the report, and made no request for the sale of the stock in question. Under such facts and circumstances, we hold that by so joining therein they have waived and are estopped in equity from asserting liability as against the defendant trustee for failure to file such alleged cause of action against the former trustee or to successfully assert any such claim against the trustee under the facts appearing herein. (*Catherwood v. Morris*, 360 Ill. 473, 196 N. E. 519.) Prior thereto, they knew of their rights under the will as construed by the court in proceedings wherein they were parties; they had refused to pay stock assessments of $50 per share in 1930 and had consented in writing to turn in or cancel 76 shares of their bank stock in payment thereof, hence they knew of the condition of the stock which had paid diminishing dividends or no dividends after 1926, all of which was prior to appointment of defendant as trustee in 1931. Furthermore, in 1935 when moneys and stocks were turned over to Mrs. Hatfield from the estate, for which she gave receipts at the bank, Mrs. Hatfield was

accompanied and advised by a member of the firm of counsel which was then and is now representing her. Sometime thereafter, the same was true as to other of the plaintiffs who attained the age of 30 years. From the record, plaintiffs cannot well assert now that they knew nothing of their legal rights in the premises until shortly before this suit was instituted in September 1940. For many years prior thereto, both before and after defendant was appointed successor trustee in 1931, all parties, by their respective conduct and from the evidence, appear to have depended upon an assumed probability that the value and earning power of the bank stock would make substantial recovery from the effects of the depression. This error in judgment, if such it was, must be considered in the light of the surrounding facts and circumstances existing at that time.

It appears from plaintiffs' exhibit 7B (abst. p. 228) in evidence, that as late as January 11, 1940 in response to a letter of inquiry to the plaintiffs concerning the further retention of stock in the Palmer-American National Bank then held by the testamentary trustee, the plaintiffs Helen Webster Hatfield, Helen Hatfield Purcell and Catherine Hatfield Olmsted had signed a letter or statement that "we wish to advise that this will be your authority to retain the 773⅓ shares of stock in the Palmer-American National Bank until advised by me to dispose of same. I have also communicated with my three daughters and they also join in this request by signing as indicated below." And again in response to a letter of inquiry dated April 11, 1940, following a conversation had with Mrs. Hatfield, the plaintiffs Helen Webster Hatfield and Catherine H. Olmsted, signed another letter in evidence as plaintiffs' exhibit 7E (abst. p. 229) which was undelivered but read as follows: "You are trustee under the will of Augustus L. Webster and Eliza E.

Webster and we are the beneficiaries of said estate. In this matter you hold 1160 shares of stock in the Palmer-American National Bank and 1570 shares of stock in the Webster Grocery Company of Danville, Illinois. This will be your authority to hold the above certificates of stock in this trust account until further advised in writing by us.'' Whether or not the signed letters or statements were delivered to the defendant at the time, they were put in evidence by the plaintiffs and tended to show a continuing understanding and course of conduct on the part of plaintiffs, which, when considered with all other facts and circumstances in evidence, we deem to have been contrary to and inconsistent with their present contentions herein.

We believe the trial court was correct in finding and holding from the whole of the evidence that the plaintiffs have failed to prove by the greater weight of the evidence the allegations of negligence charged against the defendant in the complaint. In so holding on such question of fact which it was the peculiar province of the trial court to determine, we hold that the chancellor below acted in accord with and not contrary to the manifest weight of the evidence. (*Pank v. Chicago Title & Trust Co., supra.*) The defendant trustee, not being liable to a surcharge under the decree as affirmed herein, is entitled to recover its reasonable solicitors' fees and costs as assessed by the chancellor below. *Patterson v. Northern Trust Co.,* 286 Ill. 564, 122 N. E. 55, *Kerner v. Peterson,* 368 Ill. 59, 81, 12 N. E. (2d) 884. While not commenting on all assignments of error, we have fully considered the same and upon the whole, we are in accord with the findings of the trial court as expressed in its decree and in its further action in dismissing plaintiffs' suit for want of equity and the same is hereby affirmed.

*Decree affirmed.*