MARTIN L. HARTMANN, SR., GUARDIAN OF THE ESTATE OF MARTIN LUTHER HARTMANN, JR., RENA BERTELMANN INMAN, AND RUTH MAY ROSE *v.* HENRY FRANCIS BERTELMANN, TRUSTEE UNDER THE WILL AND OF THE ESTATE OF EMMA MARKHAM BERTELMANN, DECEASED, HENRY FRANCIS BERTELMANN, HENRIETTA ABIGAIL LYONS, WILLIAM MARKHAM BERTELMANN, CECILE NILANI WILMINGTON, HENRY BERTELMANN MANUAILEHUA ROSE, GERALDINE RUTH KALANIHUKIHEI-

ONAMOKU ROSE ALULI, AND SAMUEL PARKER WIDEMANN, A MINOR.

NO. 2773.

ARGUED JUNE 19, 1952.                    DECIDED DECEMBER 22, 1952.

TOWSE, C. J., LE BARON AND STAINBACK, JJ.

OPINION OF THE COURT BY STAINBACK, J.

Emma M. Bertelmann died on April 3, 1943, leaving a will which appointed Henry Francis Bertelmann, respondent-appellee, executor and trustee under the will. The

will was admitted to probate July 7, 1943. The estate consisted of miscellaneous shares of stock, personal property, two parcels of land at Kuliouou and residential beach property situated at Diamond Head containing 53,000 square feet.

The executor's petition for approval of his final accounts was filed November 14, 1944, and a hearing thereon was had on January 2, 1945. A final order approving the accounts was filed on March 27, 1945. (An amended order, correcting certain defects in the former order, was filed June 28, 1945.)

The testatrix left six children surviving her who were beneficiaries under her will.

The will of Emma M. Bertelmann, after giving certain shares of capital stock to testatrix' son, Henry Francis Bertelmann, gave all the rest and residue of her estate, real and personal, to Henry Francis Bertelmann in trust (1) to distribute all the personal estate in equal shares to her children, the children of any deceased child to take the share of their parent by right of representation, and (2) to make a sale of all the rest of her estate "to the best advantage possible, and within a reasonable time" and (3) to distribute the proceeds in equal shares to her children, the children of any deceased child to take the share of the parent by right of representation. The shares of four children (Rena Emma Inman, Aylene Fanny Hartmann, Henrietta Abigail Widemann and Henry Francis Bertelmann) to be paid to them "in full without delay" and the share of her son, William Markham Bertelmann, to be paid to him "fifty per cent thereof without delay and the remaining fifty per cent at such time within five years from the date this will is admitted to probate as in the discretion of the executor of my will may seem proper and he may make such payment in full at one time or in partial payments from time to time as in his good judgment may

seem best," and the share of a daughter, Ruth May Rose, was to be paid "fifty per cent thereof to said Ruth May Rose without delay and the remaining fifty per cent shall be invested by my said executor and the income thereof paid to said Ruth May Rose in quarterly payment so long as she shall live * * *."

The trustee assumed his duties under the trust after he was discharged as executor of the estate in March, 1945. Shortly after his discharge as executor, a meeting of the beneficiaries was held to discuss the sale and valuation of the trust property. At this meeting it was suggested by the beneficiaries that the trustee place the Diamond Head property on the market at an asking price of $200,000. The trustee insisted that such price was excessive but all the beneficiaries agreed that this should be the asking price and if this amount could not be obtained the sum of $185,000 would be acceptable.

After this meeting the trustee took steps to dispose of the property at a price approximating the figure set by the beneficiaries of the trust. He first advertised the sale of the property in the Honolulu newspapers; receiving no response to the advertisements, the trustee listed the property for sale with real-estate brokers who continued to advertise the property.

The Kuliouou land was sold but only three offers were received for the Diamond Head property: one from a realtor for $150,000, another from a second realtor for $155,000, and a third from an unidentified person for $125,000. These offers were discussed at another meeting of the beneficiaries held on April 28, 1945, but the beneficiaries all agreed that the property should not be disposed of for less than $165,000.

After this meeting of the beneficiaries the trustee continued his efforts to sell the land, listing it with several real-estate brokers. Subsequent meetings of the benefici-

aries were held but no suggestion was made that the price be lowered.

In the latter part of 1947 the trustee reduced the price to $157,500 but received no definite offers at that price.

While attempting to sell the Diamond Head property the trustee rented the old house on the premises to his brother, to a sister and her family, and to a third party at a monthly rental of $40 per person. Statements of account were sent to the beneficiaries from time to time.

On November 21, 1947, Rena Bertelmann Inman and Ruth May Rose, beneficiaries under the trust, and Martin L. Hartmann, Sr., guardian of the surviving son of Aylene Fanny Bertelmann Hartmann, a deceased beneficiary who died on the 17th day of January, 1946, filed a bill in equity against the trustee and the other two beneficiaries praying for the removal of Henry Francis Bertelmann as trustee and the appointment of a successor-trustee and for a final accounting. The bill alleges that the trustee had neglected to sell the trust properties within a reasonable time as directed by the will and that he had failed to obtain adequate rentals for the Diamond Head premises, and that he had exhibited a hostile and antagonistic attitude towards certain beneficiaries of the trust. The allegations were denied by the respondents. After an extensive hearing the chancellor found from the evidence that the trustee had not violated his duties with respect to the sale of the trust properties; that "all of the beneficiaries were seeking and desired to obtain a price for the Diamond Head premises which was considerably in excess of its quick sale value" and that the trustee had endeavored "to carry out the wishes of all of the beneficiaries in obtaining a very high price." The chancellor reviewed the evidence of the efforts of the trustee to sell the property, the several offers received, and found that "the trustee was not the sole cause of this failure to sell the property, but that all of the

children of the testatrix contributed to this failure by requesting and advising the trustee at their various meetings to ask a price which was in excess of the value of the properties, especially Diamond Head, and by not requesting the acceptance of any of the three oral offer, ($155,000.00, $150,000.00 or $125,000.00) and at least passively consenting to the actions of the trustee in regard thereto. Their present contention that this is a valid ground for removal is like 'the pot calling the kettle black.' Since the time that these three oral offers were made, the trustee has reduced the asking price from $185,000.00 to $157,500.00, and has made it clear that any offer will be considered. The court, therefore, considers that this ground, and other grounds of like purport, seeking the removal of the trustee, have not been sustained."

The chancellor, after reviewing at length the testimony by petitioners' and respondents' witnesses regarding the claim of the petitioners that the trustee should be removed because he had failed to obtain higher rentals for the Diamond Head premises, and after inspecting the premises, concluded that the testimony of the respondents' witnesses deserved greater weight than the evidence of the petitioners, and that under the circumstances the rentals received by the trustee during this period were fair and that this ground for the removal of the trustee had not been sustained.

The chancellor concluded, however, that while there was nothing in the record reflecting upon the honesty and integrity of the trustee, the evidence showed there was serious dissension between the trustee and some of the beneficiaries and therefore removed the trustee and appointed the Cooke Trust Company, Limited, as successor-trustee. In accordance with this order, Henry Francis Bertelmann, trustee, filed a petition for the approval of his first and final accounts on June 17, 1948.

The petitioners-appellants filed various exceptions to the trustee's accounts, alleging in part that the trustee had failed to sell the trust property within a reasonable time as described by the testatrix, and that this failure had resulted in loss and damage to the trust estate in the approximate amount of $50,000, and an order surcharging this amount was prayed for against the prior trustee.

At a hearing which commenced December 7, 1948, it was stipulated by the parties that the evidence taken on the removal proceedings, together with the record, were to be considered as the evidence in this case in arriving at a decision on all questions raised by the exceptions to the trustee's final accounts.

The chancellor reiterated his findings as to the petitioners' being mainly responsible for the trustee not selling earlier at the Hung Wai Ching figure of $155,000, stating "The court believes that in April 1945 at a meeting when all the children of Emma Markham Bertelmann were present they 'pooled' their information on what they thought could be realized on the Diamond Head property and 'all agreed on a certain amount', which amount was from $165,000 to $200,000. * * * It has become very apparent to the court through the extended trial of the suit that Mrs. Inman was the moving spirit of all the beneficiaries and they all acquiesced in her suggestions and recommendations. She is primarily responsible for the non-acceptance of the offers of Hung Wai Ching and Cleveland. * * *"

That a trustee is bound to exercise ordinary care and diligence in carrying out his duties but that he is not expected to be infallible in his judgment or decisions is elementary. The trustee who acts honestly and with ordinary prudence is not liable for errors of judgment. (*Hatfield* v. *First National Bank of Danville*, 317 Ill. App. 169, 46 N. E. [2d] 94; *Cooper* v. *Ensor*, 270 Ky. 670, 110

S. W. [2d] 461; *Kinion* v. *Riley,* 310 Mass. 338, 37 N. E. [2d] 984; *In re Kohler's Estate,* 348 Pa. 55, 33 A. [2d] 920.)

In determining whether a trustee has acted prudently the courts must look at the facts as they existed, unaided by subsequent events. Whether or not the trustee is negligent depends on the circumstances of the particular case and the court will favor the trustee if there is no *mala fides* and nothing willful in his conduct. (*Union Guardian Trust Co.* v. *Stillman,* 300 Mich. 27, 1 N. W. [2d] 439.)

In the present case the will provided that the trustee must sell the real property within a reasonable time "to the best advantage possible." Obviously, the words "to the best advantage possible" add nothing to the duties of the trustee as that is part of his obligation as a trustee. What is a "reasonable time" depends upon the circumstances in the particular case. Stocks and bonds dealt with on the market can usually be sold the day offered; real estate requires more time and certain types of real estate, for example, expensive residential property, does not as a rule have a ready sale and cannot be handled as expeditiously as business property or less expensive residential property.

In the present case the provision for the payment of one-half the proceeds "without delay" to certain of the beneficiaries and the other half not to exceed five years from the date of the probate of the will, would seem to indicate that a reasonable time (at least in the opinion of the testatrix) should not exceed more than a small fraction of the five-year period. However, the circumstances in this case were peculiar in that the trustee was being advised and directed on the selling price by all the beneficiaries who had agreed that a certain minimum price must be received which was far in excess of any offers that

could be obtained. This question, therefore, resolves itself as to whether a trustee, following the directions of all the beneficiaries, is negligent in his duty in refusing to sell the property at a lesser figure than that fixed by the beneficiaries, and should be made to bear the loss when the ultimate sale by the successor-trustee of the property some five years after the death of the testatrix is at a much lower figure than could have been obtained had the same been sold within a short time after the respondent took over as trustee.

Though the primary responsibility of administering the trust is the trustee's, which he cannot delegate, yet we cannot say as a matter of law that in a case such as this, where the trust is substantially a dry trust (that is, his sole duty being merely to convert and to distribute the proceeds) that the trustee in heeding the wishes of all the beneficiaries is so negligent that he should be surcharged the loss which resulted by the delay in disposing of the trust property.

The chancellor used the term that the petitioners are "estopped" by their conduct to claim a surcharge on account of failure to sell the Diamond Head property.

Counsel for appellants points out that the essential elements to warrant a finding of estoppel are not present: (1) There is no evidence of misrepresentation by the petitioners-appellants; (2) no knowledge by the beneficiaries of facts unknown to the trustee; (3) no reliance by the trustee upon the representations or conduct of the beneficiaries; (4) no action by the trustee in reliance upon the conduct or representations of the beneficiaries to his detriment, etc.

Obviously, the chancellor, by his analysis of the case and use of the words "contributed" and "acquiesced" and in the absence of any reference to a misrepresentation by the petitioners, shows that he was not invoking the doc-

trine of estoppel *in pais,* but rather the closely related equity principle often referred to as quasi estoppel which precludes a party from taking a position inconsistent with one which he has caused or encouraged or in which he has acquiesced.

This doctrine is well stated in the New Jersey case of *Montclair Trust Co.* v. *Russell Co.,* 135 N. J. Eq. 570, 573, 39 A. (2d) 641, 643, as follows: "But there is a species of equitable estoppel, sometimes called *quasi-*estoppel, which has its basis in election, waiver, acquiescence, or even acceptance of benefits and which precludes a party from asserting to another's disadvantage, a right inconsistent with a position previously taken by him. 31 C. J. S. 341. [31 C. J. S., Estoppel, § 107, p. 341.] No concealment or misrepresentation of existing facts on the one side, no ignorance on the other, are necessary ingredients." (See also 31 C. J. S., Estoppel, § § 107, 114; *Humes Const. Co.* v. *Philadelphia Casualty Co.,* 32 R. I. 246, 79 Atl. 1; 19 Am. Jur., Estoppel, § § 61, 64.)

54 American Jurisprudence, Trusts, section 451, states this rule as to sales of trust property as follows: "The general rule that consent, affirmation, or even silent approval by a beneficiary of an act of a trustee raises an estoppel or waiver precluding such beneficiary from raising any objection or asserting any liability in respect of any breach of trust by a trustee is applicable in respect of sales of trust property. * * *"

*Stearns Co.* v. *United States,* 291 U. S. 54, 78 L. Ed. 647, states: "The applicable principle is fundamental and unquestioned. 'He who prevents a thing from being done may not avail himself of the non-performance which he has himself occasioned, for the law says to him in effect "this is your own act, and therefore you are not damnified".' [Citing cases.] Sometimes the resulting disability has been characterized as an estoppel, sometimes as a waiver. The

label counts for little. Enough for present purposes that the disability has its roots in a principle more nearly ultimate than either waiver or estoppel, the principle that no one shall be permitted to found any claim upon his own inequity or take advantage of his own wrong."

*In Re Pinney's Estate,* 250 Appellate Division 60, 294 New York Supplement 29, is somewhat similar to the present case. In that case the sole residuary legatee of an estate sought to surcharge the executors for a loss resulting from the alleged failure to sell a stock-exchange seat in accordance with directions in the will to sell the seat "as promptly as possible" after the death of the testator.

Pinney's executors qualified October 9, 1929; immediate steps were taken to dispose of the stock-exchange seat and an offer to sell for $496,000 was filed with the secretary of the stock exchange. This offer remained on file until October 29, 1929, the first day after the so-called serious "break" in the market took place.

The evidence disclosed that Mrs. Pinney informed the executors that she wished to participate in the negotiations for the sale of the seat and she instructed them to follow the advice of her financial adviser, a Mr. Strong. It was further disclosed that although the executors recommended that the offering price be reduced to conform to prevailing prices, Mrs. Pinney insisted upon the higher prices suggested by Mr. Strong.

To quote rather extensively from that opinion, the court stated: "[3] As already noted, the failure to sell at the price at which the seat was first offered in October, 1929, namely, $496,000, was due to the market collapse. It seems to us the failure to sell subsequently was not because the executors did not wish to sell, but because of the failure or refusal of Strong to agree upon a price at which the sale could have been readily made. The price at which the seat was at any time offered was considerably above

the bid price or the prices at which seats were being sold. * * *

. "It may be and probably was true, that the executors under the terms of the will should have exercised their own judgment and insisted upon a sale shortly after they had qualified. But were they not justified in the circumstances here disclosed in giving some heed to the wishes of Mrs. Pinney, the sole beneficiary under the will and who would ultimately take the net proceeds? * * *

"[5] It has long been recognized that an executor or trustee may properly respect the wishes of a living beneficiary. [Citing Bogert, Law of Trusts and Trustees, § 941.] * * *

"[6] It is well settled also that the terms of a will or the rules of law applicable thereto may be modified by an agreement between the representatives of the estate and all persons interested in the subject-matter and that where such arrangement is made or consent given, without imposition or fraud, the parties consenting thereto are estopped to question the retention of securities or the ultimate loss. * * * [Citing cases.]

"* * * This is in line with the general rule of law that invariably the question of negligence or estoppel upon the facts is to be determined from the peculiar circumstances of each case. Here, the questions of negligence and estoppel must be determined from the particular facts of this case.

"It is our conclusion, therefore, that the determination reached by the referee who saw and heard the witnesses . and to whom, in the first instance, was intrusted the duty of judging their credibility and of passing upon the facts was correct. Boyd v. Boyd, 252 N. Y. 422, 429, 169 N. E. 632."

To paraphrase a statement in the *Pinney* case, it may be and probably was true that the trustee under the terms

of the will should have exercised his own judgment and insisted upon a sale shortly after he had qualified, but was he not justified under the circumstances here disclosed in giving some heed to the wishes of the beneficiaries who would ultimately take the net proceeds?

Finally we come to the question of the death of Mrs. Aylene Hartmann, which occurred in January, 1946, and the succeeding interest, if any, of her minor son.

The property at Waikiki had not been disposed of and was not disposed of until after the removal of the trustee and the appointment of a successor-trustee.

What rights, if any, has this minor under the will of the testatrix and what are the duties and obligations of the trustee in regard thereto?

Counsel for appellants has assumed that the provision of the will directing the sale of the property and the distribution of the proceeds "in equal shares to my children * * * the child of any deceased child taking the share of the parent by right of representation" created an interest in Aylene Hartmann contingent upon her being alive at the time the property was sold and the proceeds distributed, and that upon her death, subsequent to the death of the testatrix and prior to the distribution, her son took under the will her share "by right of representation." Apparently the case below proceeded to trial on this theory.

If Martin Luther Hartmann, Jr., were a beneficiary under the will, he was of course a proper party to the proceedings below and some decision should have been made by the chancellor as to whether there was a breach of trust subsequent to the death of the minor's mother and the vesting of the minor's interest and, if so, what damage, if any, the minor sustained.

There can be little question that the trustee failed to dispose of the real estate within a "reasonable time" but, as previously pointed out, as the beneficiaries who were

*sui juris* and participated in and by actions consented to his failure to promptly dispose of the property could not complain. Further, any breaches of trust occurring up to the time of Aylene Hartmann's death on January 17, 1946, and acquiesced in and consented to by her would be binding upon the minor. However, the trust was a continuing duty and if any breach of trust occurred subsequent to January 17, 1946, the minor could not be estopped or waive his rights thereunder nor consent to bind himself. (*In Re Wohl's Estate,* 36 N. Y. Supp. [2d] 926; *Clay* v. *Thomas,* 178 Ky. 199, 198 S. W. 762; *Bowling* v. *Bank,* 219 Ky. 731, 294 S. W. 499; *Jones* v. *Jones,* 50 Hun. 603, 2 N. Y. Supp. 844.)

"If a trustee makes an improper investment of the trust fund at the request of the cestui que trust, or if the cestui que trust acquiesces in or consents to the investment, the trustee will not be held liable to make good the loss arising from such investment. But, to relieve the trustee from liability in such cases, the cestui que trust must be sui juris, and capable of acting for himself, and the acquiescence must be with full knowledge of the facts and circumstances, and with knowledge as to his legal rights." (*Hunt* v. *Gontrum,* 80 Md. 64, 30 Atl. 620.)

It would appear, however, that under the terms of the will of Emma M. Bertelmann her daughter, Aylene Hartmann, who survived the testatrix, had an indefeasible vested estate upon the death of the testatrix. It is well settled that in the absence of language indicating a contrary intent, the testamentary gift to a person *in esse* creates an interest vesting immediately upon the testator's death although the time of possession may be postponed.

"The postponement of the payment of a legacy does not prevent the legacy from vesting. The time applies to the payment, but not to the legacy itself." (*Zupplein* v. *Austin,*

6 Haw. 8, 13; see also *Estate of Isenberg,* 28 Haw. 590, 648-649.)

It is stated in 69 Corpus Juris, Wills, section 1679, page 596, "Unless the terms of the will are such as to make the gift contingent until the time for payment of the proceeds, the interests of the beneficiaries may be regarded as vested immediately, although the property is ordered to be sold and the proceeds divided or paid at a future time. * * *"

It is also the rule that in the absence of clear language showing a contrary intent, a clause substituting children in the event of the death of the named beneficiary refers to the death in the lifetime of the testator and not to the death of the beneficiary before the time of the distribution. The authorities to this effect are very numerous. (*Matter of Russell,* 168 N. Y. 169, 61 N. E. 166; *Johnson* v. *Washington L. & T. Co.,* 224 U. S. 224, 32 S. Ct. 420, 56 L. Ed. 741; *Wengerd's Estate,* 143 Pa. 615, 22 Atl. 867; *Matter of Tienken,* 131 N. Y. 391, 30 N. E. 109; *Nelson* v. *Russell et al,* 135 N. Y. 137, 31 N. E. 1008; *Gibbens* v. *Gibbens,* 140 Mass. 102, 3 N. E. 1.)

In *Johnson* v. *Washington Loan & Title Company, supra,* Mr. Justice Hughes in delivering the opinion quotes Mr. Justice Gray in *McArthur* v. *Scott,* 113 U. S. 340, 378, 380: "* * * it has long been a settled rule of construction in the courts of England and America that estates, legal or equitable, given by will, should always be regarded as vesting immediately, unless the testator has by very clear words manifested an intention that they should be contingent upon a future event. . . . Words directing land to be conveyed to or divided among remaindermen after the termination of a particular estate are always presumed, unless clearly controlled by other provisions of the will, to relate to the beginning of enjoyment by the remaindermen, and not to the vesting of the title in them. . . . So a

direction that personal property shall be divided at the expiration of an estate for life creates a vested interest."

As Aylene Hartmann had an indefeasible vested estate upon the death of her mother, Emma Markham Bertelmann, obviously Martin Luther Hartmann, Jr., took nothing under the will of his grandmother, Emma Markham Bertelmann. Aylene Hartmann having a vested estate could dispose of the estate by sale or will or otherwise. The interest, if any, that Martin Luther Hartmann, Jr., may have is derived not from the will of his grandmother, Emma Markham Bertelmann, but as devisee or heir at law of his mother, Aylene Hartmann.

The record is silent as to whether Aylene Hartmann died testate or intestate or made any disposition of her interest during her lifetime.

As Martin Luther Hartmann, Jr., was a stranger to the trust, it is doubtful whether he can in his own right assert a claim against the trustee; the right of the executor or administrator of a decedent is usually exclusive of any similar right on the part of the distributees. "* * * As a general rule, neither an heir nor a distributee can, before a decree of distribution, maintain an action at law or a suit in equity in respect of the personal estate of his ancestor, in the absence of some conduct on the part of the representative making it necessary for the heirs, distributees, or legatees to sue for the protection of their interest or the interest of the estate * * *." (21 Am. Jur., Executors and Administrators, § 1002.)

This rule is founded on the doctrine that the heirs or legatees have rights only as to what may remain of the assets of the estate after payment of debts and expenses of administration. (*Furst* v. *Brady,* 375 Ill. 425, 31 N. E. [2d] 606; *Rolfe* v. *Atkinson,* 259 Mass. 76, 156 N. E. 51.)

From the record and the evidence it is impossible for this court to make any finding as to whether there was any

breach of trust subsequent to the death of Aylene Hartmann to the damage of the minor's interest.

The finding of the chancellor is sustained and the decree affirmed.

*G. D. Crozier* (also on the briefs; *E. N. Sylva* on supp. memo.) for appellants.

*H. S. Wright* (*E. H. Beebe* and *Smith, Wild, Beebe & Cades* with him on the briefs) for appellees.

*C. N. Tavares* (*Pratt, Tavares & Cassidy* and *C. D. Pratt* on statement of Cooke Tr. Co., successor-trustee).

