JOHNSON *v.* WASHINGTON LOAN & TRUST COMPANY.

APPEAL FROM THE COURT OF APPEALS OF THE DISTRICT OF COLUMBIA.

No. 40.   Argued December 8, 1911.—Decided April 1, 1912.

A will contained the following provision: "It is my will and desire that my said homestead shall be kept and continued as the home and residence of my daughters so long as they shall remain single and unmarried. I therefore first after the death of my wife will and devise the said estate to my said daughters being single and unmarried and to the survivor and survivors of them so long as they shall be and remain single and unmarried and on the death or marriage of the last of them then I direct that the said estate shall be sold by my executors and the proceeds thereof be distributed by my said executors among my daughters living at my death and their children and descendants (*per. stirpes*)."

The testator had three sons and five daughters, all of whom were living when the will was made. The will contained provisions for testator's wife and sons. Four of the daughters married and had children; only one of them married before testator's death, and her children were born subsequently. One daughter remained single and survived all her sisters. Nine years after testator's death, the widow having also died, a decree was entered in a suit in which the daughters alone were parties, directing that the property be sold and proceeds divided among the daughters. In a suit brought subsequently by a purchaser to quiet title against claims of grandchildren of the testator, *held* that:

The provision in the will for the sale of the homestead was for the protection of testator's daughters, and the words "living at the time of my death" may not be disregarded, and the daughters had a vested remainder in fee not defeasible as to any of them by her death leaving descendants, before the expiration of the preceding estates.

Although the clause is elliptical, and the provision for representation is not fully expressed, the court finds from this and other provisions in the will that the intent of the testator is clear, in providing for his daughters and their children and descendants *per stirpes*, to establish the right of those daughters who survived him as of the time of his death and to provide for the representation of any who might previously die.

The purchasers under the decree in the previous suit for sale and division of proceeds, acquired a good title under the decree.

33 App. D. C. 242, affirmed.

THE facts, which involve the construction of a will disposing of real estate in the District of Columbia, are stated in the opinion.

*Mr. A. S. Worthington* for appellants:

Appellants contend that by the words—"On the death or marriage of the last of them (testator's five daughters) then I direct that the said estate shall be sold by my executors and the proceeds thereof be distributed by my said executors among my daughters living at my death and their children and descendants: *(per stirpes)*," testator meant that the proceeds of sale which he directed to be made should be distributed among his daughters and their children and descendants as those classes should exist when all of the daughters should be dead or married. Appellee contends on the other hand that the testator meant that the proceeds of sale should be divided among his daughters and their children or descendants as those classes existed at the time of his death; and that as none of his daughters had any children at that time the daughters took the entire remainder after the termination of the life estate of the widow of the testator.

Where the intention of a testator is plain, rules of construction are not to be resorted to for the purpose of determining that the testator did not mean what he has said in his will. *Clark* v. *Boorman's Executors*, 18 Wall. 502; *Robison* v. *Female Orphan Asylum*, 123 U. S. 702, 707; *Travers* v. *Reinhardt*, 205 U. S. 423; *Line's Estate*, 221 Pa. St. 374; *Hood* v. *Penna. Society*, 221 Pa. St. 474, 479.

The language of this will is so plain that no resort is necessary to rules of construction adopted in construing ambiguous devises. *Burnside* v. *Wall*, 9 B. Mon. 318.

In this case there was not only a preceding life estate in the widow, but an estate till marriage only in the four daughters who did not remain single. After their marriage no one had a right of possession in Metropolis View except Eliza T. Berry so long as she lived.

Nothing in the will tends to sustain the contention of the appellee as to the proper construction of Item 5th.

There is no rule of law as to the construction of wills which requires the court to overthrow the manifest intention of the testator in this case as to the persons who should share in the distribution which he directed to be made when he should have no living unmarried daughter.

When in a will there is no direct gift of property to the beneficiaries, but merely a direction that after the termination of a preceding life, or other particular estate, it shall be divided among or paid to certain classes of beneficiaries, in the absence of anything in the instrument to indicate a different intention, only those of the classes described who survive till the time fixed for the distribution will participate therein. *O'Brien* v. *Dougherty*, 1 App. D. C. 148; 2 Williams on Executors, 6th Am. ed., 1232.

When the only gift is in a direction to pay at a future time, and the will does not otherwise indicate any intention to make a present gift, the remainder will generally be construed contingent. 1 Jarman on Wills, 6th Am. ed.,

star page 757, note 2; *Hoghton* v. *Whitgreave*, 1 Jac. & Walk. 146; *Brograve* v. *Winder*, 2 Vesey, Jr., 638; *Jones* v. *Colback*, 8 Vesey, Jr., 38; *Nichols* v. *Guthrie*, 109 Tennessee, 536; *Richey* v. *Johnson*, 30 Oh. St. 288, 296; 2 Williams on Executors, 514; Hawkins on Wills, 232; Jarman on Wills (as quoted in 118 Illinois, 403), and Beach on Wills, § 120; *McClain* v. *Capper*, 98 Iowa, 145; *Benner* v. *Mawer*, 113 N. W. Rep. 663; *McCartney* v. *Osburn*, 118 Illinois, 403–423; *Bates* v. *Gillett*, 132 Illinois, 287, 299; *Matter of Baer*, 147 N. Y. 348; *Stoors* v. *Burgess*, 101 Maine, 26, 34; *Dougherty* v. *Thompson*, 167 N. Y. 472; *Matter of Crane*, 164 N. Y. 71, 76; *Lewisohn* v. *Henry*, 179 N. Y. 352; *In re Hogarty*, 62 App. Div. 79; *Hale* v. *Hobson*, 167 Massachusetts, 397; *Hobson* v. *Hale*, 95 N. Y. 588; *Dary* v. *Grau*, 190 Massachusetts, 482; *Boston Safe Deposit Co.* v. *Blanchard*, 196 Massachusetts, 35; *Reilly* v. *Bristow*, 105 Maryland, 326; *Rosengarten* v. *Ashton*, 228 Pa. St. 389.

That a remainder is vested on the death of the testator does not necessarily determine that the devisee, his heirs or assigns shall be entitled to the property which is the subject of the gift, since the estate so vested may be divested by the death of the devisee before the determination of the preceding particular estate. 2 Wash. on Real Property, star pages 263, 530; 24 Am. & Eng. Ency. 405; 23 L. R. A. 642, note; 27 L. R. A. (N. S.), 454, note.

Assuming that the intention of this testator was that the distribution involved was to be made among his daughters and their children and their remote descendants as those classes should exist, not when he died but when the distribution was to take place, it becomes wholly immaterial whether the chance which each daughter had of being in existence when that time came gave her a purely contingent interest, or a vested interest subject to be defeated by her prior death leaving children or other descendants to take her distributive share in her place. *Myers* v. *Adler*, 6 Mackey, 515; *Richardson* v. *Penicks*,

1 App. D. C. 261; *Carver* v. *Jackson,* 4 Pet. 1; *Croxall* v. *Shererd,* 5 Wall. 268; *Blanchard* v. *Blanchard,* 10 Allen,. 227; *McArthur* v. *Scott,* 113 U. S. 340; *Thaw* v. *Ritchie,* 136 U. S. 519; *Hine* v. *Morse,* 218 U. S. 493.

*Poor* v. *Considine,* 6 Wall. 458; *Cropley* v. *Cooper,* 19 Wall. 167, can be distinguished, and the reasons given for the conclusion reached in those cases lead to a directly opposite conclusion from that which is maintained for the appellee here. See *Mitchell* v. *Mitchell,* 126 Wisconsin, 47, 49; *Cripps* v. *Wolcott,* 4 Maddock Ch. 12; *Hearn* v. *Baker,* 2 K., K. & J. 386; 69 English Rep. 831.

The same principle was applied in *Stephenson* v. *Gullan,* 18 Beav. 590; *Knight* v. *Poole,* 32 Beav. 548, and *Hoghton* v. *Whitgreave,* 1 Jac. & W. 146. See also 1 Jarman on Wills, 6 Am. ed., star page 547; *Peter* v. *Beverley,* 10 Pet. 532, 563; *Cropley* v. *Cooper,* 19 Wall. 167, 174; *Robertson* v. *Guenther,* 241 Illinois, 511; and see note in 25 L. R. A. (N. S.) 887, 904, containing complete review of the numerous cases in which the question has been whether language similar to that used in that case and in *O'Brien* v. *Dougherty, supra,* makes the interest taken by the "surviving" beneficiaries vested or contingent. About one hundred cases are cited in the note. It was held in all that the remainder was contingent, and except in seven cases where it was held that it was vested subject to be divested by the death of the beneficiary before the termination of the preceding estate. *Hudgens* v. *Wilkins,* 77 Georgia, 555; *Blanchard* v. *Blanchard,* 1 Allen, 223; *In re Seamen,* 147 N. Y. 69; *Nodine* v. *Greenfield,* 7 Paige, 655; *Parker* v. *Ross,* 69 N. H. 213; *Smaw* v. *Young,* 109 Alabama, 528; *Acree* v. *Dabney,* 133 Alabama, 437.

The rule of construction, that a construction which may result in partial intestacy is to be avoided, does not apply in this case.

The language of a will which gives property to certain persons and to their children upon the happening of a

future event should not be distorted into a gift to those persons to the exclusion of their children because of the possibility that they may not have any children. *Augustus v. Seabolt*, 3 Metc. (Ky.) 155; *Matter of Disney*, 190 N. Y. 128.

When there is a devise to parent and children—as to parent and descendants—without more, the parent takes a life estate with remainder to such children or descendants. *Ward* v. *Grey*, 26 Beaven, 485; *Jeffery* v. *De Vitre*, 24 Beav. 296; *Jeffrey* v. *Honeywood*, 4 Madd. Ch. 397; *Hall* v. *Hall*, 78 Atl. Rep. 971; *Hood* v. *Dawson*, 98 Kentucky, 285; 33 S. W. Rep. 75; *Noe's Admr.* v. *Miller, Excr.*, 31 N. J. Eq. 234; *Stiles* v. *Cummings*, 50 S. E. Rep. 484; *Logan* v. *Hall*, 43 S. W. Rep. 402; *Ballantine* v. *Ballantine*, 152 Fed. Rep. 775; *Forest Oil Co.* v. *Crawford*, 23 C. C. A. 55; *Barclay* v. *Platt*, 170 Illinois, 384; *Kuhn* v. *Kuhn*, 78 S. W. Rep. 16.

The interests of the children of Washington Berry's daughters were not in any wise affected by the proceedings in Equity Case No. 500 or by the conveyances made by the trustees appointed in that case. *McArthur* v. *Scott*, 113 U. S. 340; *Bennett* v. *Hamill*, 2 Sch. & Lef. 566, 577; *Masie* v. *Donaldson*, 8 Ohio, 377, 381; *Long* v. *Long*, 62 Maryland, 33; *Marshall* v. *Augusta*, 5 App. D. C. 183, 194; *Gedges* v. *Western Baptist Theological Institution*, 13 B. Mon. 530; *Harris* v. *Strodl*, 132 N. Y. 392, 397; *Firth* v. *Denny*, 2 Allen, 468; *Hinkley* v. *House of Refuge*, 40 Maryland, 461; *Lowell* v. *Charlestown*, 66 N. H. 584; *Sawyer* v. *Freeman*, 161 Massachusetts, 543; *Estate of Delaney*, 49 California, 76; *Matter of Lorenz's Estate*, 76 N. Y. Supp. 653.

The authorities cited by counsel for the appellee on the subject of acceleration do not support his claim that the failure of a preceding estate by renunciation of the devisee thereof has the same effect as the death of the devisee where that would be inconsistent with the scheme of the

will. *Blatchford* v. *Newberry*, 99 Illinois, 11, 57; *Coltman* v. *Moore*, 1 McA. 197, do not support appellee's contention in this case.

*Mr. B. F. Leighton* for appellee:

The remainders were vested. Testator's direction for a sale of the property and a division of the proceeds among his daughters living at his death was equivalent to a limitation of the title in fee to them, and they could have elected, on testator's death, to take the property instead of the proceeds to be derived from its sale. *Poor* v. *Considine*, 6 Wall. 472; *Cropley* v. *Cooper*, 19 Wall. 167; *Hauptman* v. *Carpenter*, 16 App. D. C. 524; Fearne on Contingent Remainders, 351; Goodlittle on Whitby, 1st Burrows, 232.

The legal presumption arising from the making of the will itself is that the testator intended to dispose of all of his property, and not die intestate as to any of it. This presumption must prevail unless overborne by the terms of the will itself. *Given* v. *Hilton*, 95 U. S. 591; *Snyder* v. *Baker*, 5 Mackey, 455.

The first taker is always the favorite object of testator's bounty, and, as such, entitled to every implication. *Barber* v. *Pittsburgh &c. Ry.*, 166 U. S. 100; and see *Inglis* v. *Sailor's Snug Harbor*, 3 Pet. 118; *Sheriff* v. *Brown*, 5 Mack. 172.

Taking *per stirpes* is taking by descent, and is the only mode of succession known to the common law. 2 Blackstone's Comm., c. 32, p. 517.

Where the distribution is to be *per stirpes*, the principle of representation will be applied to all degrees; children never take concurrently with their parents. 2 Jarman on Wills, 5th ed., marginal page 100, and 3 *Id.* 174; *Dengel* v. *Brown*, 1 App. D. C. 423.

A bequest to A and his children when A has no children, either at the time the will is made or when it takes effect

at the testator's death, vests the absolute property in A. *Van Zant* v. *Morris,* 25 Alabama, 292.

The binding force of the rule is recognized in *Akers* v. *Akers,* 23 N. J. Eq. (8 Green) 26; *Nightingale* v. *Burrell,* 15 Pick. 104; *Moore* v. *Leach,* 5 Jones' Law (N. C.), 88; *Jones' Ex.* v. *Jones,* 13 N. J. Eq. 236; *Johnson* v. *Johnson,* McMullan's Equity (S. C.), 345; *Reader* v. *Spearman,* 5 Richardson (S. C.), 88; *Chrystie* v. *Phyfe,* 19 N. Y. 345, 354; *Hamlin* v. *Osgood,* 1 Redf. 411; *Torrance* v. *Torrance,* 4 Maryland, 11.

A descendant is one who proceeds from the body of another, however remotely. The word is coextensive with issue, but does not embrace others not of issue. *Estes* v. *Gillett,* 132 Illinois, 287, 297; *Tichnor* v. *Brewer's Exrs.,* 98 Kentucky, 349; and see also *Baker* v. *Baker,* 8 Gray, 101, 120; *Barstow* v. *Goodwin,* 2 Bradf. 413, 416; *Hauptman* v. *Carpenter,* 16 App. D. C. 524; *Myers* v. *Adler,* 6 Mackey, 515; *O'Brien* v. *Dougherty,* 1 App. D. C. 148; *Richardson* v. *Penicks,* 1 App. D. C. 261; *Thaw* v. *Ritchie,* 136 U. S. 519; *McArthur* v. *Scott,* 113 U. S. 340; *Williamson* v. *Field,* 2 Sanford's Chancery, 608; *Croxall* v. *Shererd,* 5 Wall. 288; *Linton* v. *Laycock,* 33 Oh. St. 128; *Tayloe* v. *Mosher,* 29 Maryland, 454, cited and followed in *Fairfax* v. *Brown,* 60 Maryland, 50.

In cases of doubt as to whether a remainder be vested or contingent, it is a circumstance of weight in favor of its being the former, where the beneficiaries are the children of the testator. *Boston Safe Deposit Co.* v. *Blanchard,* 196 Massachusetts, 35; *Smith* v. *Bell,* 6 Pet. 68. The intention of the testator expressed in his will shall prevail, provided it be consistent with the rules of law. 15 S. & R. 195; Hawkins on Wills, 2d ed., 222; *Allender* v. *Keplinger,* 62 Maryland, 12; *Sheriff* v. *Brown,* 5 Mackey, 176; *Vaughan* v. *Headfort,* 10 Sim. 641.

The intention of the testator is the first rule of construction to which all other rules are subsidiary. *Earnshaw* v.

*Daly,* 1 App. D. C. 218; *De Vaughn* v. *De Vaughn,* 3 App. D. C. 50.

Tested by the decided cases of this jurisdiction, as well as upon principle, the remainder devised to the daughters of Washington Berry is vested and not contingent.

Under the circumstances the court had the power, and it was its duty, to accelerate the time named by the testator in his will for the sale of Metropolis View. *Coltman* v. *Moore,* 1 MacA. 197; *Trustees* v. *Morris,* 36 S. W. Rep. 2; *Estate of Rawlings,* 81 Iowa, 701; *Randall* v. *Randall,* 85 Maryland, 431; *Woodburn's Estate,* 151 Pa. St. 586; *Ferguson's Estate,* 138 Pa. St. 208; *Schulz's Estate,* 113 Michigan, 592; *Vance's Estate,* 141 Pa. St. 201; *Slocum* v. *Hogan,* 176 Illinois, 539; 1 Jarman, 5th ed., 574; *Blatchford* v. *Newberry,* 99 Illinois, 11; *Coover's Appeal,* 74 Pa. St. 143.

As to the doctrine of *stare decisis,* as applied to titles of real property, see *Middleton* v. *Parke,* 3 App. D. C. 149.

MR. JUSTICE HUGHES delivered the opinion of the court.

This is an appeal from a decree of the Court of Appeals of the District of Columbia, which affirmed a decree in favor of the complainant, The Washington Loan & Trust Company. The suit was brought to quiet title, and the question concerns the construction of the fifth clause of the will of Washington Berry, who died in 1856. This clause relates to the testator's homestead—the property known as Metropolis View, containing about 410 acres, in the District of Columbia—and is as follows:

"Item 5th. It is my will and desire that my said homestead shall be kept and continued as the home and residence of my daughters so long as they shall remain single and unmarried. I therefore first after the death of my wife will and devise the said estate to my said daughters being single and unmarried and to the survivor and survivors of them so long as they shall be and remain single and

unmarried and on the death or marriage of the last of them then I direct that the said estate shall be sold by my executors and the proceeds thereof be distributed by my said executors among my daughters living at my death and their children and descendants (*per stirpes*) and I hereby reserve to my heirs the family vault and burial ground embracing half an acre of ground and having the said vault as a centre and on such sale as aforesaid by my executors I earnestly enjoin on my sons or some of these sons to purchase the said homestead that it may be kept in the family."

The will was executed in 1852. The testator had three sons and five daughters, all of whom were living at that time; and they, with his wife, survived him. Four of the daughters married and had children; only one of them was married before the testator's death and her children were born subsequently. One daughter, Eliza Thomas Berry, remained single and survived all her sisters, dying in 1903. The testator appointed his wife and one of his sons executors and trustees; the widow acted as executrix, but the son declined.

Soon after the death of the testator, the widow removed from the homestead and neither she nor any of her unmarried daughters occupied it again. During the war the estate suffered much injury; the vault was destroyed and it was necessary to remove the bodies it had contained; the rent and profits were not sufficient to pay taxes or to provide for repairs and the property fell into a dilapidated condition.

The testator's widow died in 1864. In the following year a suit was brought by three of the married daughters and their husbands in the Supreme Court of the District of Columbia to have the property sold and the proceeds divided among the daughters—save the proceeds of the burial ground and vault, which the bill asked to have distributed among the heirs at law. The other children

of the testator, with the spouses of those that were married, were parties defendant. There were, then living, three grandchildren—by the daughters—but they were not parties or represented. All the defendants, save one married daughter—who was a minor and answered by guardian, submitting her rights to the court—consented to the decree. Eliza Thomas Berry, the unmarried daughter, stated in her answer that she relinquished "upon the sale of the estate in the bill mentioned her right to the possession and enjoyment thereof whilst unmarried," and consented "to the distribution of the proceeds of sale as prayed." The case was referred to the auditor to take testimony and report whether the sale would be for the advantage of the infant defendant. He reported that the property was an unfit residence for the unmarried daughter; that the land generally was poor and unproductive as a farm; that the testator had used it as a mere place of residence, and it was fit only, as a whole, for a man of fortune; that the burial place had been demolished and the buildings and fences were out of repair; and that it was a fit case for a sale.

In October, 1865, the court entered a decree for sale, appointing for that purpose two trustees, who were authorized to divide the estate and to sell it in parcels if this were found advisable. The division was made accordingly, and certain lots were sold at public auction. Subsequently, upon the petition of two of the daughters and their husbands, stating that they had children to support and were in need of the money that would come from the sale, the court ordered the trustees to sell the residue of the estate, and sales were made at public auction, which were confirmed by the court in October, 1868, and the proceeds were distributed among the five daughters of the testator. In the long period of years since that time the property has been divided into many separate parcels, which have been the subject of convey-

ances, it being assumed that a valid title passed under the court's decree.

In 1906, suit was brought in the Supreme Court of the District of Columbia by the children of the daughters of the testator against the children of the deceased sons, averring that on the death of the unmarried daughter, Eliza T. Berry, in 1903, the entire equitable interest in the property vested in fee simple in the complainants; that their rights and interests had not been affected by the decree in the former suit or by the sales that had been made under it. It was prayed that trustees might be appointed in the place of those named in the testator's will, to whom the legal title should be transferred. Decree was passed and trustees were appointed by the court on February 20, 1907.

Thereupon Henry P. Sanders brought this suit against all the parties in the suit above mentioned—including the trustees—to quiet the title to a portion of the land which he had derived, by mesne conveyances, through the sale made under the decree passed in 1868; and he alleged that he, and those under whom he claimed, had been for thirty-five years in exclusive and continuous possession, relying upon the validity of their title acquired *bona fide* for a valuable consideration. Mr. Sanders died in 1907, appointing The Washington Loan & Trust Company executor and trustee of his last will and testament by which the real property in question was devised, and an order was made substituting this company as complainant.

It is contended by the appellants that, under the provision of the fifth item of the will, the proceeds of the sale, which the testator directed to be made of the property, should be distributed "among his daughters and their children and descendants as those classes should exist when all of the daughters should be dead or married." The appellee insists that, at the death of the testator, the

daughters took a vested remainder in fee, "to take effect in possession on the marriage of all of them, or the death of the last unmarried daughter."

On examining the scheme of the will, we find that the testator made separate provision for his three sons on the one hand, and for his five daughters on the other. While he contemplated the marriage of his children, and the birth of issue, he did not seek to tie up his property for the benefit of his children's descendants. The testator made no provision whatever for grandchildren or for the descendants of his children save as it was made in the clause in question and in the residuary clause.

To each of his sons he devised a tract of land. The devise was to the son, his heirs and assigns. In the case of two of the sons, it was made on condition that the son and his heirs should convey to the testator's daughters the son's interest in certain real estate, and in case the conveyance were not made within two years, the devise was not to take effect and the property was to go to his daughters living at his death, share and share alike. There was a slight difference in the wording of the conditional devises to the daughters; in the one, they were described as "my daughters living," and in the other as "my daughters living at my death." After thus providing for the sons in the first three items of the will, the testator adds that he annexes to their several estates "this limitation that if either of them shall die without leaving lawful issue that the estate of each one or both if more than one shall go to the survivor or survivors, his and their heirs." We have no occasion to consider the effect of this provision upon the devises to the sons, but it may be noted that there was no gift to the children or descendants of the sons, nor did the testator undertake in case all the sons died without leaving issue to devise the property to the children or descendants of his daughters.

By the fourth item of the will, the testator gave to his

wife for life, in case she survived him, the homestead estate—the property here in question—together with certain money and securities subject to the maintenance and education of his five daughters, while unmarried, and to the provision that each daughter, on marriage and birth of issue, should receive one-sixth part of the personal property bequeathed. When the condition was satisfied by birth of issue, the daughter took her share absolutely. Then followed the fifth clause above quoted, under which this controversy has arisen. And to this was added the residuary clause—item sixth—providing as follows: "I direct that my executors shall divide and distribute all the rest residue and remainder of my personal estate among my children at my death and the descendants of such as may have died during my life to take a parent's part."

In the disposition of the homestead, the testator explicitly states his purpose. He was planning for the protection of his daughters. He desired the property to be the home of his widow so long as she lived and that after her death it should continue to be the home of his daughters while they remained unmarried. When this object had been attained, the property was to be sold and the proceeds divided.

These avails were to be distributed "among my daughters living at my death and their children and descendants (*per stirpes*)." The words "living at my death" may not be disregarded. They are not to be eliminated in the interest of a construction which would leave the clause as though it read, "among my daughters who shall be living at the time of the death or marriage of my last unmarried daughter and the children and descendants (*per stirpes*) of such of my daughters as may have previously died." At the time of the death of the testator, his five daughters were living, and none of them had children or descendants. By the definitive language of the

clause, these daughters were then ascertained and identified as those entitled to the immediate enjoyment of the property on the termination of the preceding estates. They, therefore, had a vested remainder in fee. *Croxall* v. *Shererd*, 5 Wall. 268, 288; *Doe* v. *Considine*, 6 Wall. 458, 474–477; *Cropley* v. *Cooper*, 19 Wall. 167, 174; *McArthur* v. *Scott*, 113 U. S. 340, 380; *Hallifax* v. *Wilson*, 16 Ves. 171. The fact that the property was directed to be sold and that they were described as distributees of the proceeds did not postpone the vesting of the interest. "For many reasons," said this court by Mr. Justice Gray in *McArthur* v. *Scott, supra* (pp. 378, 380), "not the least of which are that testators usually have in mind the actual enjoyment rather than the technical ownership of their property, and that sound policy as well as practical convenience requires that titles should be vested at the earliest period, it has long been a settled rule of construction in the courts of England and America that estates, legal or equitable, given by will, should always be regarded as vesting immediately, unless the testator has by very clear words manifested an intention that they should be contingent upon a future event. . . . Words directing land to be conveyed to or divided among remaindermen after the termination of a particular estate are always presumed, unless clearly controlled by other provisions of the will, to relate to the beginning of enjoyment by the remaindermen, and not to the vesting of the title in them. . . . So a direction that personal property shall be divided at the expiration of an estate for life creates a vested interest." In *Cropley* v. *Cooper, supra*, the testator bequeathed the rent of his house to his daughter for her life, and it was provided that at her decease the property should "be sold, and the avails therefrom become the property of her children or child, when he, she, or they have arrived at the age of twenty-one years, the interest in the meantime to be applied to their maintenance." When the testator

died, his daughter, who survived him, had one son about three years old. It was held that the son took a vested interest at the death of the testator. The court said (p. 174): "A bequest in the form of a direction to pay at a future period vests in interest immediately if the payment be postponed for the convenience of the estate or to let in some other interest. . . . In all such cases it is presumed that the testator postponed the time of enjoyment by the ultimate legatee for the purpose of the prior devise or bequest. A devise of lands to be sold after the termination of a life estate given by the will, the proceeds to be distributed thereafter to certain persons, is a bequest to those persons and vests at the death of the testator."

The question remains, whether the interest vested in the daughters was defeasible on condition subsequent. That is, whether on the death of a daughter—before the determination of the preceding estates—leaving descendants, her interest was to be divested and her descendants were to take by substitution.

What, then, was the intent of the testator in providing for the children and descendants of daughters *per stirpes?* If the clause be considered to import a condition subsequent, providing for a divesting of the interest of the daughters who survived him and a substitution of their children and descendants, it would necessarily follow that the children and descendants of daughters who died before him would be excluded from participation. It is difficult to suppose that this was his purpose. That his daughters might marry and die, leaving children, before he died, was undoubtedly contemplated. At the time of his death, one of his daughters had already married. If she survived him, she was to have a share in the property. Did the testator intend that if she died after his death, and before the time for distribution, her interest was to be divested in favor of her children and descendants, and if she died before the testator her children and descendants were

to be barred? Or, if it had happened that three of the daughters had married and died during the testator's lifetime, leaving children, and another daughter had married and died after the testator, were the children of the latter daughter to share in the avails of the property, on the death of the last daughter, unmarried, to the exclusion of all the other daughters' children? It is not to be thought that the testator designed such a purely arbitrary selection unless the words forbid a different interpretation.

The language of the clause is not of this imperative character. As well might it be said that it required the conclusion that the daughters and their respective children and descendants were to take concurrently. But this would not be a sensible construction, and it would seem. to be equally contrary to the intention of the testator to imply a condition subsequent and thus not only to make defeasible the interest which passed to the daughters, but to shut out the children and descendants of daughters who predeceased him.

The clause is obviously elliptical, and the provision for representation is not fully expressed. Taking the context and the entire plan of the will into consideration, we believe that what the testator had in mind was to establish the right of his daughters, who survived him, as of the time of his death, and to provide for the representation of any of his daughters, who might previously die, by her children and descendants. So construed, the disposition is a natural one and representation of the same sort is accorded as that provided for in the next paragraph when, in giving to his children the residuary personal estate, the testator fully defined the representation intended by stating that "the descendants of such as may have died during my life" were "to take a parent's part."

We are of the opinion that the remainder in fee which vested in the daughters, all of whom survived the testator, was not defeasible as to any of them by her death, leaving

descendants, before the expiration of the preceding estates. As already stated, all the daughters were parties to the suit brought in 1865; and all consented to the decree, save the married daughter who was under age and whose interests were duly protected by the court. It follows that the purchasers under the decree acquired a good title.

The complainant was entitled to the relief sought.

*Decree affirmed.*