JOHN GATLING, EXECUTOR OF THE ESTATE OF BARTHOLOMEW M. GATLING, v. BART M. GATLING, JR., LAWRENCE GATLING, WILLIAM C. GATLING, LOUIE GATLING WHITE, JAMES M. GATLING; CLAUDE BARBEE III, FIRST CITIZENS BANK & TRUST COMPANY, GUARDIAN FOR MRS. LENORA C. GATLING; JOHN GATLING, LETTIE ALSTON, CHRISTINE MIAL, SARAH GATLING BARBEE.

(Filed 15 January, 1954.)

**1. Appeal and Error § 29—**

Exceptions not discussed in the brief are deemed abandoned, and therefore where there is a general exception to the entire judgment, but the

brief is addressed solely to a particular part of the judgment specifically assigned as error, only the particular assignment of error will be reviewed, and other portions of the judgment will not be disturbed.

**2. Wills § 31—**

Each will must be construed in the light of its own particular language.

**3. Same—**

The cardinal principle in the interpretation of wills is to discover the intent of the testator, looking at the instrument from its four corners, and such intent will be given effect unless contrary to some rule of law or at variance with public policy.

**4. Same—**

The intent of testator is to be gathered from the will as a whole, and effect will be given to every clause and phrase and word, when possible, in accordance with the general purpose of the will.

**5. Wills § 35: Executors and Administrators § 13a—Under direction of will, lands of testator other than lots specified should first be sold if necessary to make assets.**

Testator devised all of his property in trust for his wife for life with full power to her to sell or mortgage same, with remainder to his children and the representatives of deceased children, *per stirpes.* By later item he directed that certain lots facing the homeplace should not be subject to the provisions of the prior item during the life of his wife, and that in the final distribution of the lands, the lots be allotted to designated children and grandchildren, and accounted for in the division. It was apparent from the will as a whole that testator loved his home, which was then owned by one of his children, and wished it kept in the family, and was seeking to protect it from adverse surroundings by the provisions relating to the specified lots. *Held:* The lots specified were not subject to sale or mortgage by the wife, and in the event it is necessary to sell real estate to make assets, such lots do not stand on a parity with the other real estate for this purpose, but such other real estate should be first sold and the lots specified allotted to the devisees named, who should account to other devisees in order that there be an equal division among the beneficiaries.

APPEAL by defendants Louie Gatling White, Bart M. Gatling, Jr., James Moore Gatling, William C. Gatling and Sarah Gatling Barbee from *Paul, Special J.,* August Special Term 1953. WAKE. The other defendants did not appeal.

This is a civil action instituted by John Gatling, Executor of the last will and testament of Bartholomew Moore Gatling, deceased, seeking a construction of the will and for advice and guidance in the administration of the estate thereunder pursuant to the Declaratory Judgment Act, G.S. 1-253 *et seq.*

All the parties waived a jury trial, and the court after hearing the evidence found the facts, made conclusions of law, and entered judgment. There are no exceptions to the court's findings of facts.

These are the essential facts. 1. Bartholomew Moore Gatling, a citizen and resident of Raleigh, died testate 2 August 1950; his last will and testament was duly probated and is recorded in the Office of the Clerk of the Superior Court of Wake County in Will Book S, p. 225. His son, John Gatling, the plaintiff, is executor of his will. This is a summation of the essential parts of the will necessary to be stated for the purposes of this appeal.

*Item 1.* I give, devise and bequeath all of my property both real and personal to my faithful and devoted wife, Lenora Crudup Gatling, in trust for herself for life and after her death equally to my children and if any child or children be dead leaving any lawful issue then alive such issue shall take the share of his, her, or their parent would have received, if alive *per stirpes*.

It is my express direction that my wife shall have full power, authority and control over the estate during her life and especially the right to encumber or sell such part thereof as in her opinion may be necessary to provide ample support and maintenance for herself without application to, or order from any court and without the requirement of giving any bond or rendering any account of her transaction.

*Item 3.* I have heretofore conveyed to my daughter, Louie, subject to the life estate of my wife and myself, the home place with nearly six acres of land around it. This conveyance was made for full value, and is not to be construed as an advancement.

*Item 5.* I direct that the 13 lots facing South on E. Martin Street and numbered 143, 144, 145, 146, 147, 148, 149, 177, 178, 179, 180, 181 and 182 shall not be subject to the provision of Item I of this will during the life of my wife, but that in the final distribution or division of my lands, they be allotted to Bart M. Gatling, Jr., James Moore Gatling, Louie Gatling White, Claude B. Barbee, 3rd, and Sarah Gatling Barbee and accounted for in the division—and with the request that they hold the same as a protection against any undesirable encroachments in close proximity to the home, and that if any of them need to sell their part of these lots, they first offer the same to Louie Gatling White or other members of the family then owning the home place. If, however, the home place should pass out of the family this request is not to have any force or effect.

*Item 6.* In this item I wish to give to each of my children, but subject to the rights of my wife under Item I of this will, some item or items of personal property as a memorial of the home in which they were born and reared—all of them to remain in the home as long as my wife lives there. (a) To Bart M. Gatling, Jr., the portrait of his great Grandfather, Bartholomew Figures Moore, and a described oriental rug; (b) To John Gatling the desk and chair said to have been used by Henry Clay in the

House of Representatives at Washington, D. C., and also the medical hand bag or gritchel that was used by his great grandfather, Mr. John Gatling of Sunbury in Gates County. It is in brown leather and has in it some of the medical instruments used by doctors of that period; (c) To Lawrence Gatling, certain dining room furniture and a soup tureen given us as a wedding present; (d) To William Gatling, certain flat silver including six silver teaspoons marked SLB received by me from my mother; (e) To James Moore Gatling, the silver water pitcher given by my father to my mother in 1878 and so marked and also the old gold hunting case watch with fob-chain and gold seal stone attached. The fob-chain and gold seal stone are said to have belonged to his great-great-grandfather, James Gatling, and the watch was given me by my father; (f) To my daughter, Louie, the oriental rug in her mother's private sitting room. (This item stricken out by Bart M. Gatling at her request and given to Bart M. Gatling, Jr.), the old pine chest made in dove tail and the Currier & Ives print Washington's Dream.

I have not included my grandchildren Claude and Sarah Barbee in this item as they are well provided with silver, furniture, and many other articles of household wares from their mother's estate.

*Item 7.* If our present servants Lettie Alston and Christine Mial continue in our service until my death or so long as each of them are not incapacitated by sickness I give to each and to the one made incapable of service from disease if she continued until disabled to serve us the sum of two hundred and fifty dollars.

*Item 8.* I appoint my son John Gatling as executor of this will, written in my own handwriting, hoping he can by good management, preserve and keep the homeplace for some member of the family for quite a while yet, and I suggest that he look into the possibility of setting up a development of a small area around the home for white people before finally concluding any disposition of the lots owned North and East of the home. The property has been in the family almost a hundred years. It would be a very happy thought if one of us would continue to own it. If all of you work in harmony it might be possible. May God bless all of you and Good-bye.

2. All the beneficiaries under the will of Bartholomew Moore Gatling were living at the time of his death. All the beneficiaries, except John Gatling, are defendants; the widow, Mrs. Lenora Crudup Gatling, a person *non compos mentis,* appeared by her duly appointed and acting trustee, the First Citizens Bank and Trust Company, though by inadvertence in the caption of this proceeding and in the complaint the First Citizens Bank and Trust Company is denominated her guardian. Pending the appeal Mrs. Gatling died 2 October 1953, and her duly appointed admin-

istrator, the First Citizens Bank and Trust Company, came in, and, on its motion was admitted to become a party to this proceeding.

3. The home place referred to in Item 5 of the will is now owned by Louie Gatling White, in fee, though at the time the judgment was entered in the Superior Court, Lenora Crudup Gatling was living and had a life estate therein, and did not constitute any part of the estate of which Bartholomew Moore Gatling died seized and possessed.

4. The executor has in his possession certain personalty, including certain items of personalty specifically bequeathed under the will. The executor estimates the total value of all this personalty as between $2,000 and $3,000, which is the only evidence of value in the record.

5. The testator owned at his death over 100 vacant building lots in the eastern part of Raleigh, including the 13 lots mentioned in Item 5 of the will. The executor estimates that all these lots have a minimum value of $55,500, which is the only evidence of value in the record. The 13 lots have a value of about $19,500.

The debts, taxes and cost of administration of the estate will apparently exceed $10,000, and it appears that the personal property of the estate will be insufficient to pay the debts, taxes and costs of administration, and that resort to the realty will be necessary in order to pay these debts.

The court ordered and decreed: "1. That the executor must first sell all of the personal property belonging to the estate, including that specifically bequeathed, and must apply the proceeds of such sale to the payment of debts, taxes and costs of administration before he resorts to the sale of any of the real estate to make assets, unless all of the devisees join in a request that such personal property not be sold; 2. That the Executor would be permitted to sell real estate to make assets to pay the debts, taxes and costs of administration of the estate before selling the articles of personal property bequeathed under Item 6 of the will if all of the devisees, legatees and beneficiaries under the will request and consent to the sale of real estate without the sale of the particular articles of personal property bequeathed under said item of the will; 3. That in the event it is necessary to sell real estate to make assets in the settlement of said estate, the 13 lots facing south on East Martin Street, as described in Item 5 of the will, and the remainder of the lands belonging to said estate and devised under Item I of said will are specifically devised subject to the debts, taxes and costs of administration of the estate, and stand on a parity for the purpose of the payment of such charges. In the event any part of said lands shall be sold to make assets, the devisee or devisees whose devise is thereby diminished will be entitled to such contribution from the other devisees as will effect an equality of contribution as among all of said devisees; 4. That the executor is not required to sell lands to

make assets to pay the bequests of money to Lettie Alston and Christine Mial under Item 7 of the will."

To the judgment rendered the defendant, Louie Gatling White, excepted and appeals assigning error. When the case was called for argument in the Supreme Court Bart M. Gatling, Jr., James Moore Gatling, William C. Gatling and Sarah Gatling Barbee made a motion that they be allowed to join in as appellants, which motion was allowed.

*John W. Hinsdale, Howard E. Manning, and Frank S. Katzenbach for Louie Gatling White, Bart M. Gatling, Jr., James Moore Gatling, William C. Gatling, and Sarah Gatling Barbee, Defendants, Appellants.*

*Samuel R. Leager for First-Citizens Bank and Trust Company, Defendant, Appellee.*

*Brassfield & Maupin, Allen Langston, and I. Weisner Farmer for Plaintiff, Appellee.*

PARKER, J. The appellants have two assignments of error. First: A general assignment of error as to the rendering and signing of the judgment. Second: They specifically assign as error the first sentence of the third conclusion of law in the judgment "that in the event it is necessary to sell real estate to make assets in the settlement of said estate, the 13 lots facing South on East Martin Street, as described in Item 5 of the will and the remainder of the lands belonging to said estate and devised under Item 1 of said will, are specifically devised, subject to the debts, taxes and costs of administration of the estate, and stand on a parity for the purpose of the payment of such charges."

The appellants did not specifically except to the second sentence of the third conclusion of law reading: "In the event any part of said lands shall be sold to make assets, the devisee or devisees whose devise is thereby diminished will be entitled to such contribution from the other devisees as will effect an equality of contribution as among all of said devisees."

Although the appellants excepted generally to the signing of the entire judgment, the argument in their brief is addressed only to that part of the judgment that they specifically assign as error. Therefore, under Rule 28 of the Rules of Practice in this Court exceptions not discussed are deemed abandoned. This leaves intact the second sentence of the third conclusion of law set forth above. The appellants state in their brief: "No harm can come to anyone by the preservation of these 13 lots; they stand as a guarantee to the heirs not participating in them that they will receive equitable and just treatment. Much good may come from their preservation; Mr. Gatling thought so. No harm can come."

The brief of the appellee, First Citizens Bank and Trust Company, administrator of the estate of Lenora Crudup Gatling, deceased, hereafter

called the Trust Co., makes these arguments. First: That Lenora Crudup Gatling under Item 1 of the will was given a life estate in all of testator's estate, including the 13 lots mentioned in Item 5 of the will, with power to encumber or sell such part of the estate, excepting the 13 lots described in Item 5, as may be necessary for her support. That Item 1 is the basic dispositive provision of the will, and means that what remains of the testator's estate at his wife's death is to be divided into seven equal shares for division between his six living children and one share for the issue of a child deceased. That Item 5 only modifies this basic disposition to this extent; if there is enough property to go around, then these 13 lots are to be included in the respective shares of the three children and two grandchildren named; if not, then the interest in these lots of the five individuals named in Item 5 would be reduced to the extent requisite to make an equal *per stirpes* distribution, or these five individuals would be required to contribute ratably to the other devisees to make an equal distribution. That it is erroneous to consider Item 5 as a specific devise and Item 1 as a residuary clause, and that all of the devisees under the will are on a parity and should bear ratably a diminution of real property caused by payment of debts, taxes and costs of administration. Second: Regardless of which land may be sold, the devisees of that land are entitled to equitable contribution from the other devisees.

The appellants contend in their brief: First: That Item 5 of the will is a specific devise of the 13 lots; that Item 1 is a general devise, and that if it is necessary to sell realty to pay debts of the estate and costs of the administration resort should first be had to realty of the testator other than that of the 13 lots set forth in Item 5. Second: If the devises in Items 1 and 5 of the will be considered of the same class, that Items 5 and 8 of the will should be given such controlling effect as to require resort to the sale of other lands to pay debts of the estate and costs of the administration before the specifically described 13 lots may be sold.

The epigram of Sir William Jones over 250 years ago "no will has a brother" has been often quoted by the courts. *Ball v. Phelan,* 94 Miss. 293, 49 So. 956, 23 L.R.A. (N.S.) 895; *Meeker v. Draffen,* 201 N.Y. 205, 94 N.E. 626, 33 L.R.A. (N.S.) 816. Two wills rarely use exactly the same language. Every will is so much a thing of itself, and generally so unlike other wills, that it must be construed by itself as containing its own law, and upon considerations pertaining to its own peculiar terms. Probing the minds of persons long dead as to what they meant by words used when they walked this earth in the flesh is, at best, perilous labor. As said by *Smith, C. J.,* in *Brawley v. Collins,* 88 N.C. 605, "it is seldom that we can derive aid from an examination of adjudicated cases."

However, the two following canons of construction have been universally established by the courts.

The cardinal principle to be sought in the interpretation of wills is to discover the intent of the testator, looking at the instrument from its four corners, and when that intent is ascertained, the mandate of the law is "thy will be done" unless contrary to some rule of law or at variance with public policy. *Trust Co. v. Whitfield,* 238 N.C. 69, 76 S.E. 2d 334; *House v. House,* 231 N.C. 218, 56 S.E. 2d 695; *Holland v. Smith,* 224 N.C. 255, 29 S.E. 2d 888; *Williams v. Rand,* 223 N.C. 734, 28 S.E. 2d 247.

To find out the meaning of particular parts the intention of the testator is to be gathered from the will as a whole. Where possible, effect should be given to every clause and phrase and to every word in accordance with the general purpose of the will. "Every part of a will is to be considered in its construction, and no words ought to be rejected, if any meaning can possibly be put upon them. Every string should give its sound." *Edens v. Williams,* 7 N.C. 27; *Williams v. Rand, supra; Holland v. Smith, supra.*

Reading the will in its entirety it clearly appears that the testator was proud of his distinguished ancestry, and loved his home with a deep and abiding affection. In Item 8 of his will he expresses the hope that some member of the family could keep and preserve the homeplace for quite a while, and says "the property has been in the family almost a hundred years; it would be a very happy-thought if one of us would continue to own it; if all of you work in harmony it might be possible. May God bless all of you and Good-bye." It also plainly appears that it was the testator's intent and purpose to preserve the homeplace from adverse surroundings by endeavoring to keep the ownership of the 13 lots facing on E. Martin Street and specifically numbered in Item 5 of the will in members of his family, so long as the homeplace remained in the family.

To effectuate this purpose in Item 1 of his will he gives, devises and bequeaths all of his property, both real and personal, to his wife in trust for herself for life and after her death equally to his children and if any child or children be dead leaving any lawful issue then alive such issue shall take the share his, her, or their parent would have received if alive *per stirpes.* His wife was given power to encumber or sell such part thereof as necessary for her support. It would seem from reading the will as a whole that the devise to the children after the death of the life tenant should be regarded as general rather than specific, since we have a statute G.S. 31-41 which states that every will shall be construed to speak and take effect as if it had been executed immediately before the death of the testator, unless a contrary intention shall appear by the will. No such contrary intention appears in the instant will. 57 Am. Jur., Wills, p. 938; 88 A.L.R. Anno. p. 560.

However, in Item 5 of the will the testator *directs* that the 13 lots facing South on E. Martin Street and specifically numbered shall not be subject to the provision of Item 1 of the will during the life of his wife, but that in the final distribution or division of his lands these lots be allotted to Bart M. Gatling, Jr., James Moore Gatling, Louie Gatling White, Claude B. Barbee, 3rd, and Sarah Gatling Barbee and accounted for in the division. In this Item 5 the testator requests that they hold the same as a protection against any undesirable encroachments in close proximity to the home and if any of them need to sell their part of these lots they first offer the same to the member of the family owning the home-place; but if the homeplace should pass out of the family this request is not to have any force.

The verb *direct* has as one of its meanings "to point out to with authority; to instruct as a superior or authoritatively; to order; as, he directed them to go; the judge directs the jury in matter of law." Webster's New International Dictionary (2d Ed.).

Looking at the will from its four corners we construe the following words in Item 5 of the will "I direct that the 13 lots facing South on E. Martin Street and numbered 143, 144, 145, 146, 147, 148, 149, 177, 178, 179, 180, 181 and 182 shall not be subject to the provision of Item one of this will during the life of my wife, but that in the final distribution or division of my lands, they be allotted to Bart M. Gatling, Jr., James Moore Gatling, Louie Gatling White, Claude B. Barbee, 3rd, and Sarah Gatling Barbee and accounted for in the division" to be a positive, unqualified and mandatory direction that the widow of the testator was given no power to encumber or sell the 13 lots facing South on E. Martin Street for her support, and that in the final distribution or division of the testator's lands they be allotted to the devisees named in Item 5 of the will; that in such division these named devisees shall account to the other devisees so that there may be an equal division between the children of the testator and the lawful issue alive of a deceased child who shall take his, her or their parent's share, if alive, *per stirpes,* and that in the event it is necessary to sell real estate of the testator to make assets to pay debts, taxes and costs of administration resort must first be had to lands of the testator other than the 13 lots facing South on E. Martin Street, and specifically numbered in Item 5 of the will. In the following cases directions in a will were held to be imperative. *Trust Co. v. Allen,* 232 N.C. 274, 60 S.E. 2d 117; *Seagle v. Harris,* 214 N.C. 339, 199 S.E. 271.

We are further supported in our opinion as to the construction of the will by the words the testator used in Item 8 of his will. To adopt the construction contended for by the Trust Company we should have to ignore the imperative direction of Item 5 of the will, and be deaf to the

sound this string gives. The language used by the testator is clear. His intent as expressed is controlling.

This cause is remanded for judgment in accordance with this opinion, and the judgment as thus modified is affirmed.

Modified and affirmed.