LANDON ROBERTS, EXECUTOR OF THE ESTATE OF EMORIE D. EDWARDS, DECEASED, ELEANOR EDWARDS COLBY AND ROBERT DOUGHTON EDWARDS, v. NORTHWESTERN BANK, TRUSTEE UNDER THE WILL OF ROBERT L. DOUGHTON, DECEASED.

(Filed 25 August, 1967.)

**1. Wills § 34—**

The law favors the early vesting of estates, and, in the absence of an intent plainly inferable from the terms of the will, courts will construe a devise as vesting upon the death of the testator rather than at the termination of the particular estate.

ROBERTS *v.* BANK.

**2. Same—**
    Testator devised his property in trust for his daughter for life with provision that upon her death the property should go "in equal shares, *per stirpes*," to other children and the stepdaughter of testator, named in the will. *Held:* The term *"per stirpes"* denotes the inheritable quantity of the estate in remainder and does not annex time to the substance of the gift, and therefore the remainder vests as of the time of testator's death.

**3. Wills § 27—**
    Each will must be construed to effectuate the intent of testator as expressed in the particular language used, and since the language of no two wills is identical, each will must be construed as a thing of itself.

    HIGGINS, J., took no part in the consideration or decision of this case.

APPEAL by defendant from *Gambill, J.,* 28 January 1967 Session of WILKES.

Action for declaratory judgment.

Plaintiffs seek a declaration of their rights and status in the trust created by the will of Robert L. Doughton (testator), who died a resident of Alleghany County on 1 October 1954. Plaintiffs are the executor and children of a deceased daughter of testator, Mrs. Emorie Doughton Edwards, who died 3 March 1964; defendant is the trustee under the will. The parties waived a jury trial and, *inter alia,* stipulated the following facts:

Testator, a widower, was survived by two sons, Claude T. Doughton and J. Horton Doughton; by two daughters, Emorie Doughton Edwards and Reba Doughton; and by a stepdaughter, Mabel H. Stevens. Of these five, only Reba Doughton now survives; the other four have died, each leaving descendants surviving. Mrs. Emorie Doughton Edwards was survived by a son and a daughter, plaintiffs Eleanor Edwards Colby and Robert Doughton Edwards, to whom she willed all of her property in equal shares. Both are married, and each has living children.

The trust in suit is a spendthrift trust which testator established for the benefit of his daughter, Reba Doughton. During her lifetime, he directed that the income from the trust be used for her support. At her death, the will provides that "the principal and any accumulated income of this trust shall be paid over, in fee simple absolutely, in equal shares, PER STIRPES, to my other children and my stepdaughter, Mabel Hicks Stevens." Testator also devised his homeplace to defendant trustee to be maintained as a residence for Reba Doughton during her lifetime. "Upon the death" of Reba, he devised the remainder in the property to his children and stepdaughter "in equal shares PER STIRPES as tenants in common in fee simple." In addition to the above provisions, testator made outright gifts of stock to Emorie Doughton Edwards and Mabel Hicks Stevens. He

also devised a farm in fee simple to J. Horton Doughton. To his other son, Claude T. Doughton, he devised a tract of land for life with remainder "unto the children of my son, Claude T. Doughton, in equal shares PER STIRPES as tenants in common." The residuary clause of testator's will is as follows:

> "All the rest, residue, and remainder of my estate, of whatsoever type or property, and wheresoever situate, shall be divided unto four equal shares, and I will, devise, and bequeath one of such equal shares to my son Claude, one such equal share to my son Horton, one such equal share to my daughter, Emorie, and one such equal share to my stepdaughter Mabel Hicks Stevens, all such shares to my said four children (including my stepdaughter Mabel) to pass in fee simple PER STIRPES.
>
> "My daughter, Reba, being otherwise provided for, is not given a share of my residuary estate.
>
> "The furniture in my residence at Laurel Springs is deemed by me a part of my residual estate."

Plaintiffs allege that, before the administration of the estate of Mrs. Emorie Doughton Edwards can be terminated, they must know whether any part of the trust held by defendant constitutes an asset of said estate.

Upon the foregoing facts, Judge Gambill adjudged:

(1) Emorie Doughton Edwards' interest in the trust held by defendant was contingent and, it having failed to vest during her lifetime, her death extinguished her interest, which was not an asset she could dispose of by will.

(2) At the present time, her children, plaintiffs Eleanor Edwards Colby and Robert Doughton Edwards have no vested interest in the trust; each has a contingent interest therein.

(3) The ultimate takers of the remainder interest in the trust cannot be ascertained until the death of Reba Doughton, when the roll will be called.

From the judgment entered, defendant appeals.

*Meekins and Roberts for plaintiff appellees.*
*Whicker, Whicker & Vannoy for defendant appellant.*

SHARP, J. The question presented is whether the remainder which testator gave his daughter, Emorie, in the Reba Doughton trust estate and in his homeplace vested in her absolutely at his death or was contingent upon her surviving her sister, Reba, the life tenant. Decision turns upon the proper construction of the following provisions of Articles III and VI of the will:

"Upon the death of my daughter, Reba, the principal and any accumulated income of this trust shall be paid over, in fee simple absolutely, in equal shares, Per Stirpes, to my other children and my stepdaughter, Mabel Hicks Stevens * * * and upon the death of my said daughter, Reba, I give and devise the remainder of the trust property (the principal) under this Article VI [testator's homeplace] to my children and my stepdaughter, Mabel Hicks Stevens, in equal shares Per Stirpes as tenants in common in fee simple."

If testator's direction that, at the death of Reba, the principal and accumulated income of the trust estate be paid over to his other children (three in number, who are named elsewhere in his will), and his stepdaughter (whom he obviously regarded as one of his children) "in fee simple absolutely in equal shares, Per Stirpes" referred merely to the time the four might enjoy the estate in possession, the remainder was vested. If, however, the quoted provision means that a child had to survive the life tenant in order to acquire an interest in the property, Emorie's interest was contingent. If her remainder was contingent, since Reba survives and Emorie is dead, no interest ever vested in her.

The trial judge concluded that testator's three children (Emorie, Claude, and Horton) and his stepdaughter (Mabel) were contingent remaindermen and that their children (or other lineal descendants) who could answer the roll call at the death of Reba Doughton would take by purchase from testator and not by inheritance or under the will of the parent. We take a different view.

Except for the indiscriminate use of the term *per stirpes* by the draftsman of testator's will, we apprehend that there would be no question but that the four children took vested remainders. *Mason v. White,* 53 N.C. 421.

"A remainder is vested when it is limited to an ascertained person or persons with no further condition imposed upon the taking effect in possession than the determination of the precedent estate. * * * A remainder is contingent if the taking in effect in possession is subject to a condition precedent either as to the persons who are to take or as to the event upon which the preceding particular estate is to terminate." 33 Am. Jur., Life Estates, Remainders, etc. §§ 66, 68 (1941).

*Accord, Parker v. Parker,* 252 N.C. 399, 113 S.E. 2d 899; *Power Co. v. Haywood,* 186 N.C. 313, 119 S.E. 500; 1 Simes and Smith, Future Interests § 138 (2d Ed., 1956). "The uncertainty which distinguishes a contingent remainder is not the uncertainty whether the remainderman will ever enjoy it, but the uncertainty whether there will be

a *right* to such enjoyment." Tiffany, Real Property § 323 (3d Ed., 1939). (Emphasis added); *accord, Power Co. v. Haywood, supra.*

"A gift or grant of a life estate with remainder to a named person (or persons) on the death of the life tenant creates a vested remainder on the death of the testator." 33 Am. Jur., Life Estates, Remainders, etc. § 115 (1941). "A remainder limited without words of condition to a class of persons, one or more of whom is in existence and ascertained, is vested, though subject to be divested in part by the coming into existence or ascertainment of other members of the class." 1 Simes and Smith, Future Interests § 165(2). (2d Ed., 1956). "When a limitation of a remainder is in terms to a class, but really describes the persons who are to take as definitely as though they were named, and there is no indication of an intention that they shall take only in case they survive the termination of the particular estate, the remainder vests in them immediately upon its creation." 33 Am. Jur., Life Estates, Remainders, etc. § 117 (1941). It is immaterial, therefore, whether the devise in question be considered one to testator's children as a class or one to named individuals.

The law favors the early vesting of estates, and, in the absence of an intent plainly inferable from the terms of the will, courts will construe a devise as vested at the death of the testator rather than at the termination of the particular estate. *Little v. Trust Co.,* 252 N.C. 229, 113 S.E. 2d 689; *Elmore v. Austin,* 232 N.C. 13, 59 S.E. 2d 205; *Priddy & Co. v. Sanderford,* 221 N.C. 422, 20 S.E. 2d 341; *Coddington v. Stone,* 217 N.C. 714, 9 S.E. 2d 420; *Yarn v. Dewstoe,* 192 N.C. 121, 133 S.E. 407; *Witty v. Witty,* 184 N.C. 375, 114 S.E. 482. Conditions of survival are not implied unless it is clear that the testator so intended. 2 Simes and Smith, Future Interests § 576 (2d Ed,. 1956).

> "(T)he cases in which the courts imply a condition to the time of distribution actually expressed in the will, if taken literally, cannot be carried out unless the legatee or devisee survived. This is obviously true where the gift is to A 'on his marriage.' Though not so obvious, it is believed to be equally true of a gift 'to A at his age of twenty-one,' if the language is taken literally. Indeed a literal interpretation of a gift 'to A to be paid at the age of twenty-one' would seem to require that A survive to that age, since no payment can be made to A unless he is alive. Thus, a requirement of survival is never implied in the absence of specific language giving rise to the implication; and the presumption in favor of a vested construction will often cause the court to call the condition a condition subsequent rather than a condition precedent. In those cases where a con-

dition precedent of survival is found to exist, there is a literal basis for such implication because the direction in the will cannot be effectively carried out unless the devisee or legatee survives." *Ibid.*

See *Anderson v. Felton,* 36 N.C. 55.

In *Witty v. Witty, supra,* the devise was to the testator's wife for life, and, at her death or remarriage, he directed that the land be sold and divided among his "lawful heirs." At the time of the testator's death, he was survived by his wife and five children. At her death, all five children were dead. None left children. The only one who married was the last to die, and he devised the property to his wife and adopted son. The court held that the original testator's five children took a vested remainder immediately upon his death and that the surviving son inherited the interests of the four who predeceased him. The entire property, therefore, passed by the fifth son's will. Stacy, J., (later C.J.), speaking for the Court said:

> " 'As a general rule, the death of the testator is the time at which the members of a class are to be ascertained in case of a gift to the testator's heirs, next of kin, or other relatives, unless the context of the will indicates a clear intention that the property shall go to the heirs, next of kin, or other relatives at a different time, such as at the time of distribution, or at the death of the first taker, or at the date of the execution of the will. . . . Where the gift is to the heirs or next of kin of another than the testator, it ordinarily refers to the death of such other, unless the context of the will manifests that the class shall be determined at a different time, such as at the time of distribution.'
>
> \*    \*    \*
>
> "Again, the fact that the direction is to sell the realty at the expiration of the preceding particular estate and to divide the proceeds derived therefrom ordinarily will not affect the general rule as to when the remainder is to vest." *Id.* at 379, 114 S.E. at 484-85.

As pointed out in 2 Simes and Smith, Future Interests § 585 (2d Ed., 1956), where a testator devises property to a life tenant and the remainder over is given with some such language as "after the death of the life tenant," it is sometimes urged that such language requires the remainderman to be living at the end of a particular estate and thus creates a remainder contingent upon survivorship. "The American courts, however tend strongly to disregard

such language as mere surplusage, and hold that the interest of the remainderman is vested and transmissible." See *Trust Co. v. Bass,* 265 N.C. 218, 238-39, 143 S.E. 2d 689, 703-04, and 33 Am. Jur., Life Estates, Remainders, etc. §§ 112-114 (1941).

In *Pridgen v. Tyson,* 234 N.C. 199, 66 S.E. 2d 682, the testator devised land to his grandson for life and after his death to testator's male children and their bodily heirs. In answer to the contention that the roll call of sons should be made at the death of the life tenant, the Court said:

> "It is the general rule that remainders vest at the death of the testator, unless some later time for the vesting is clearly expressed in the will, or is necessarily implied therefrom, *Priddy & Co. v. Sanderford, supra. Weill v. Weill,* 212 N.C. 764, 194 S.E. 462; *Witty v. Witty,* 184 N.C. 375, 114 S.E. 482; *Baugham v. Trust Co.,* 181 N.C. 406, 107 S.E. 431. And it is a prevailing rule of construction with us that adverbs of time and adverbial clauses designating time, do not create a contingency but merely indicate the time when enjoyment of the estate shall begin. *Priddy & Co. v. Sanderford, supra; Carolina Power Co. v. Haywood,* 186 N.C. 313, 119 S.E. 500." *Id.* at 201, 66 S.E. 2d at 684.

The devise in *Priddy & Co. v. Sanderford, supra* at 423, 20 S.E. 2d at 342, was to H for life "and at her death I want this land to go to my children or their representatives." In construing this devise, Barnhill, J. (later C.J.), said:

> "(T)here is no language used which indicates an intention that the devise is to become effective at any time other than the effective date of the will. The only circumstance which prevents the immediate enjoyment of the estate is the existence of the life estate.
>
> "The term 'or their representatives' is a term of inheritance synonymous with 'heirs' which guards against any lapse of legacy, 23 R.C.L., 538-39, and gives assurance that either the children or those who represent them shall have the enjoyment of the estate devised. It creates neither a contingency nor a limitation over, but denotes that inheritable quality of the estate in remainder." *Id.* at 425-26, 20 S.E. 2d at 344.

With what intent did testator devise to his stepdaughter Mabel and his three children "in equal shares *per stirpes?*" Did he think of the gift to his other three children and stepdaughter as being effective at his death with enjoyment postponed until the death of Reba, or did he think of the gift as being made in the future? Did the in-

ROBERTS *v*. BANK.

clusion of the term *per stirpes* in the direction that at the death of the life tenant the trust estate be paid over to them in fee simple absolutely, in equal shares, and the inclusion of a similar provision in the devise of the homeplace, annex time to the substance of their gift and make Emorie's survival of the life tenant a condition precedent to the vesting of any estate in her? The term *per stirpes* denotes the division of an estate by representation, a class taking the share to which the deceased whom they represent would have been entitled had he been living. *Trust Co. v. Bryant*, 258 N.C. 482, 128 S.E. 2d 758.

*Johnson v. Washington Loan & T. Co.*, 224 U.S. 224, 32 Sup. Ct. 421, 56 L. Ed. 741, was an appeal to the Supreme Court of the United States from the Court of Appeals for the District of Columbia in a suit to quiet title. For the stated purpose of providing a home for his daughters as long as they remained unmarried, the testator devised his homeplace to his single daughters "and to the survivor and survivors of them so long as they shall be and remain single and unmarried, and on the death or marriage of the last of them, then I direct that the said estate shall be sold by my executors, and the proceeds thereof be distributed by my said executors among my daughters living at my death, and their children and descendants (*per stirpes*). . . ." With reference to the use of the term *per stirpes*, Mr. Justice Hughes (later Chief Justice), said:

> "The clause is obviously elliptical, and the provision for representation is not fully expressed. Taking the context and the entire plan of the will into consideration, we believe that what the testator had in mind was to establish the right of his daughters, who survived him, as of the time of his death, and to provide for the representation of any of his daughters, who might previously die, by her children and descendants." *Id.* at 240.

The court held that the devise vested a remainder in fee simple in all the daughters who were living at the time of the testator's death, and the fact that the property was directed to be sold and the proceeds to be divided at a later time did not postpone the vesting of the interest.

We think the reasoning of Mr. Justice Hughes is equally applicable to the use of the term *per stirpes* in the will of R. L. Doughton and also that the term was used with the same purpose as was "or their representatives" in *Priddy & Co. v. Sanderford, supra, i. e.,* "to denote the inheritable quality of the estate in remainder." We hold, therefore, that the inclusion of the words *per stirpes* did not annex time to the substance of the gift to Emorie D. Edwards and that it

created neither a contingent remainder nor a vested remainder defeasible on condition subsequent. Emorie D. Edwards took a vested remainder in the property in question at the time of the death of testator.

Plaintiffs relied upon the case of *Bowen v. Hackney*, 136 N.C. 187, 48 S.E. 633, in which the devise was, "(A)t the expiration of the life estate of my wife, that which is given to her for life shall be equally divided between all my children, share and share alike, the representatives of such as may have died to stand in the place of their ancestors." *Id.* at 188, 48 S.E. at 633. Looking at the will as a whole, the Court was of the opinion that a condition precedent had been annexed to the gift which would prevent any child from taking unless he should survive the life tenant. It said that the devise should be construed as if it read: "So that at the expiration of the life estate of my wife, that which is given to her for life shall be equally divided between all my children, then living, and the representatives of such as may have died, the latter to stand in the place of their ancestors." *Id.* at 191, 48 S.E. at 634. As Parker, J. (now C.J.), said in *Gatling v. Gatling*, 239 N.C. 215, 221, 79 S.E. 2d 466, 471:

> "The epigram of Sir William Jones over 250 years ago 'no will has a brother' has been often quoted by the courts. . . . Two wills rarely use exactly the same language. Every will is so much a thing of itself, and generally so unlike other wills, that it must be construed by itself as containing its own law, and upon considerations pertaining to its own peculiar terms."

Our efforts to divine the intent of the testator in this case — the goal of all testamentary construction — have led us to conclude that he intended his devise to Emorie to vest in her absolutely at the time of his death.

The judgment of the court below is reversed and the cause remanded to the Superior Court for entry of judgment in accordance with this opinion.

Reversed.

HIGGINS, J., took no part in the consideration or decision of this case.